858 F.2d 889
 12 Fed.R.Serv.3d 429
 George ENG, Plaintiff-Appellee
v.
Thomas A. COUGHLIN, III, Charles J. Scully, Stephen Adler,
Charles Hernandez and Donald Selsky, Defendants,
Charles J. Scully and Stephen Adler, Defendants-Appellants.
George ENG, Plaintiff-Appellant,
v.
Nathaniel MILLIGAN, Defendant-Appellee.
 Nos. 983, 948, Dockets 87-2391, 87-2415.
 United States Court of Appeals,
Second Circuit.
 Argued March 24, 1988.
Decided Oct. 4, 1988.
 
 Ellen H. Woodbury, New York City (Cahill Gordon & Reindel, New York City, of counsel), for plaintiff-appellee.
 Charles R. Fraser, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Lawrence S. Kahn, Deputy Sol. Gen., New York City, of counsel), for defendants-appellants.
 Before KAUFMAN, CARDAMONE and PIERCE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 On this appeal we direct attention to the role of the qualified immunity and Eleventh Amendment defenses as they relate to an interlocutory appeal brought by state prison officials from a denial of their motion for summary judgment. Neither of these defenses were addressed by the district court. Of course, the essence of such defenses is a claimed right not to have to stand trial. When raised, therefore, they must promptly be considered by a trial court, and an order denying a summary judgment motion sought on the basis of either defense is subject to immediate appeal; otherwise, the right not to stand trial would be irretrievably lost. The merits of the defenses could be considered on this appeal, but such is not our customary practice, and prudence dictates that this case not be an exception.
 
 
 2
 We must also review whether a prisoner segregated from the general prison population--held incommunicado while facing prison disciplinary charges in a plexiglas cell--has any due process rights to assistance in preparing a defense to those charges. Here, though an assistant was assigned, no assistance was furnished. We recognize that no clearly established constitutional right to assistance under these circumstances existed at the time these events took place. But, in the future, the failure to render any assistance whatsoever to a prisoner so disabled will not be held to measure up to constitutional standards.
 
 BACKGROUND
 A. Facts
 
 3
 Appellant George Eng was committed to the custody of the New York State Department of Correctional Services (Department) at Auburn on December 23, 1977 to serve a life sentence. Five years later, on December 28, 1982, he was transferred from Auburn to Green Haven and placed in a Special Housing Unit (SHU) for infractions of prison disciplinary rules he incurred at Auburn. He was scheduled for release into the general prison population on January 26, 1983.
 
 
 4
 Two weeks before this release five incidents that are the subject of the instant litigation occurred. On January 12 and 13 three different encounters involving the use of force against appellant resulted in a number of disciplinary charges being laid against him. A fourth altercation occurred on January 14 when Eng was taken to a new gallery in the prison, different than the one in which he had been housed, and there ordered into a new cell with plexiglas sheets against the bars. Appellant's entry into the plexiglas cell, which involved the use of force, was captured on videotape. Later that day Eng was taken to the prison infirmary for his injuries and refused treatment.
 
 
 5
 As a result of the incident in the tank outside the plexiglas cell, Eng was charged with "assault," "threats," "refusing a direct order," and "interference." For refusing medical assistance, he was charged with "interference," "lying" and "abuse of privileges." From January 14 until January 26 he was confined for 20 hours a day to the plexiglas cell.
 
 
 6
 On January 18--upon being served with a formal charge in a Superintendent's Proceeding--he requested that defendant Nathaniel Milligan, a correction counselor, be assigned to assist him. Defendant Scully, Superintendent of Green Haven, granted the request. Eng and Milligan offer different accounts of the nature of the help requested. Eng claims that he told Milligan to interview "the whole gallery" including inmates known as "Kasa," "Zulu," and "Dance" and also asked for copies of the videotape and of certain documents in preparation for the hearing. Milligan reported to the hearing office that Eng desired assistance and wanted copies of relevant reports and the tape, but that he had not requested interviews of any witnesses. Milligan interviewed no witnesses and conducted no investigation of the just recited incidents.
 
 
 7
 Also on January 18 defendant Stephen Adler, the Director of Programs at Green Haven, was appointed by Superintendent Scully to conduct the hearing on the charges against Eng. That same day Adler signed a request from the Green Haven Executive team to transfer Eng out of Green Haven. Prior to the hearing Adler's supervisor, Deputy Superintendent Carl Berry, discussed with Adler Eng's "disciplinary problems." Eng contends that these discussions improperly influenced Adler.
 
 
 8
 Appellant pled not guilty to each of the seven charges, and gave his version of the events of January 12-14. Adler told Eng that the incidents on January 12 and 13 were irrelevant. At the conclusion of the first hearing, appellant made a number of requests, including one that Milligan assist him in identifying and interviewing inmate witnesses and that Adler review the videotape prior to the second hearing. Eng also requested copies of statements to be taken from the two physician's assistants, Use of Force reports, medical reports, and reports for mechanical restraints. The hearing was adjourned in order for Adler to conduct an investigation.
 
 
 9
 Eng and the defendants disagree about what actions Adler and Milligan took in furtherance of the investigation or to assist Eng and about the extent to which these actions conformed to Eng's requests. Milligan did not speak with Eng but again reported, based on other officers' comments, that Eng requested no witnesses. Adler interviewed correction officer Dean--who was present and involved in the events of January 12 and 13--and two physician's assistants.
 
 
 10
 On January 26 Eng was transferred to the Clinton Correctional Facility. Adler reconvened the Superintendent's Proceeding there on January 28, 1983 and stated why he did not review the videotape and why he would not provide copies of the documents that Eng had requested. Adler found Eng guilty at the time of cell transfer of assaulting officer Dean, threatening officers, interfering with officers' duties, and refusing a direct order to enter his cell. Adler also found Eng guilty, in the infirmary incident, of interfering with the medical staff and abuse of privilege. A sentence of 360 days disciplinary confinement in SHU and 360 days loss of good time was imposed. The reason Adler gave for this disposition was the "serious nature of the charges." The defendants argue that the loss of good time is irrelevant in light of Eng's life sentence. Eng notes that this sentence was the longest Adler had ever imposed and that it exceeded Department guidelines.
 
 
 11
 The disciplinary case was subject to automatic review by the Departmental Review Board. Defendant Donald Selsky, in the Department's Special Housing office in Albany, New York, reviewed the written record and affirmed defendant Adler's disposition of the four charges arising from the plexiglas cell incident. Selsky also affirmed the interference charge, but dismissed the abuse of privileges charge arising from the infirmary incident, and therefore reduced the penalty to 330 days of SHU confinement.
 
 
 12
 Appellant commenced an Article 78 proceeding in New York State Supreme Court. Without reaching the merits of Eng's claims, that court granted his petition on the ground that the complete transcript of the proceedings had not been provided to it and that Adler's taped interview with Dean was missing. Eng had served his full 330 days by the time of decision, but his record was expunged of the disciplinary charges and convictions.
 
 B. Proceedings in the District Court
 
 13
 Eng commenced the two instant 42 U.S.C. Sec. 1983 actions in the United States District Court for the Southern District of New York (MacMahon, J.) which, as consolidated, name as defendants Scully, Adler, Selsky, Milligan, Thomas A. Coughlin, III, Commissioner of the Department of Corrections, and Charles Hernandez, Director of Special Housing/Inmate Discipline Programs and a member of the Departmental Review Board. Eng alleged that these six defendants violated his federal constitutional rights in the preparation and conduct of his hearings, and in the administrative review of those proceedings.
 
 
 14
 The defendants moved for summary judgment on the merits of Eng's procedural due process claims. Each defendant raised a claim of qualified official immunity and Eleventh Amendment immunity from suit. Addressing only whether genuine issues of material fact existed, the district court granted summary judgment dismissing Eng's claims against defendants Coughlin, Hernandez, Selsky, and Milligan. No appeal has been taken from the judgment in favor of the first three of these defendants, but Eng appeals the dismissal of his claims against Milligan.
 
 
 15
 Eng moved for partial summary judgment against Adler, alleging that Adler did not (1) act impartially in his role as disciplinary hearing officer, (2) allow Eng to call witnesses, (3) allow Eng to be present when he interviewed the two physician's assistants, (4) permit Eng to marshal evidence and present a defense at the hearing. Eng also asserts that Adler (5) inadequately recorded a statement of evidence relied upon and the reasons for his disposition of the charges against him. Eng claims that these actions violated rights that were clearly established in January 1983. See Wolff v. McDonnell, 418 U.S. 539, 563-72, 94 S.Ct. 2963, 2978-82, 41 L.Ed.2d 935 (1974); Patterson v. Coughlin, 761 F.2d 886, 890 (2d Cir.1985), cert. denied, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); McCann v. Coughlin, 698 F.2d 112, 121 (2d Cir.1983). The district court denied this motion and Adler's cross-motion for summary judgment on the grounds that numerous unresolved issues regarding Adler's conduct raised questions of fact sufficient to preclude summary judgment for either party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c).
 
 
 16
 With respect to defendant Scully, Eng claims that Scully knew when he appointed Adler that Adler was biased against him and that Eng would not receive a fair disciplinary hearing. The district court stated that these pleadings also raised factual issues regarding Scully's role in the disciplinary hearing sufficient to preclude summary judgment. It made no mention of Adler's and Scully's claims of qualified and Eleventh Amendment immunity as a possible basis for granting them summary judgment.
 
 
 17
 Regarding defendant Milligan, appellant asserts that the assistance he received from Milligan was deficient and denied him his rights to due process of law. Specifically, Eng claims that Milligan failed to (1) provide him with access to documentary evidence, (2) interview witnesses, and (3) permit Eng to view the videotape of the plexiglas cell incident. The district court recognized that, in certain circumstances, a prison inmate is entitled to assistance from a fellow inmate or a prison employee, but held that Eng's request for assistance "is beyond the scope of assistance an inmate is entitled to at a prison disciplinary hearing." Construing all the facts in favor of Eng, the district court reasoned that Milligan did not deny Eng any constitutionally-protected right. Again, having decided Milligan's claim on the merits, the district court had no occasion to discuss Milligan's defenses based on qualified and Eleventh Amendment immunity.
 
 
 18
 From the denial of their motion for summary judgment Adler and Scully appeal. Eng appeals the grant of summary judgment in Milligan's favor.
 
 DISCUSSION
 I. Jurisdiction
 
 19
 We consider first our jurisdiction to review the interlocutory appeals from the denial of summary judgment to Adler and Scully, and the grant of summary judgment to Milligan. Generally, jurisdiction exists only over "final decisions" of a district court. 28 U.S.C. Sec. 1291 (1982). But under the "collateral order" doctrine, a non-final decision that does not terminate an action may be appealable under Sec. 1291 when it falls within "that small class which finally determines claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Three conditions must be met: The order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); see Flanagan v. United States, 465 U.S. 259, 265, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984).
 
 
 20
 In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court established that federal officials are immune from liability for alleged constitutional violations if the claims do not allege violations of law which were "clearly established at the time an action occurred." Id. at 818, 102 S.Ct. at 2738. The Court in a footnote repeated its prior dictate that, for purposes of immunity, lawsuits against state officials brought under Sec. 1983 should be treated identically to suits against federal officials brought directly under the Constitution. Id. at 818 n. 30, 102 S.Ct. at 2738 n. 30. Subsequently, the Supreme Court held that a "district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. Sec. 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The Court reasoned that denial of a motion for summary judgment is effectively unreviewable on appeal after trial because "[t]he [qualified immunity] entitlement is an immunity from suit rather than a mere defense to liability." Id. at 526, 105 S.Ct. at 2815 (emphasis in original). In addition, it held that a denial of qualified immunity is "conclusive" and "conceptually distinct from the merits of the plaintiff's claim." Id. at 527, 105 S.Ct. at 2816. Thus, a district court's denial of a motion for summary judgment raising a claim of qualified immunity is subject to interlocutory review. Musso v. Hourigan, 836 F.2d 736, 741 (2d Cir.1988).
 
 
 21
 A second jurisdictional issue is whether the effective denial of the claims of absolute immunity from money damages under the Eleventh Amendment is reviewable. Eleventh Amendment immunity protects state officials sued for damages in their official capacity. Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107 87 L.Ed.2d 114 (1985). Like qualified official immunity, Eleventh Amendment immunity, as a type of absolute immunity, embraces not only protection from liability but also protection from proceeding to trial. See Mitchell, 472 U.S. at 525-26, 105 S.Ct. at 2814-15. Thus, a denial of a motion to dismiss claims on Eleventh Amendment grounds is a final decision that also is appealable under 28 U.S.C. Sec. 1291. See id.; Nixon v. Fitzgerald, 457 U.S. 731, 743, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982); Minotti v. Lensink, 798 F.2d 607, 608 (2d Cir.1986), cert. denied, --- U.S.----, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987).
 
 
 22
 Eng's appeal from the grant of summary judgment in Eng v. Milligan in favor of Milligan is reviewable because the judgment in that separate case dated September 3, 1987 is effectively a "final decision" appropriate for review under Sec. 1291. Fed.R.Civ.P. 54(a) provides for appeals from orders which include judgments final as to all claims and parties involved. Clearly, were Eng v. Milligan a separate action, granting Milligan's motion for summary judgment would be a final disposition with regard to the parties and claims and hence would be appealable under Sec. 1291 and Fed.R.Civ.P. 54(a).
 
 
 23
 As a consolidated action, the order respecting Milligan--as well as the other defendants--is a partial disposition of claims and parties, normally requiring certification under Fed.R.Civ.P. 54(b). But, in this case the district court, in compliance with Fed.R.Civ.P. 58 and 79(a), entered a separate document styled as a judgment dismissing all claims against the defendants. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam) (discussing requirements of Rules 54(b), 58 and 79(a)). There is no doubt regarding the finality of the decision and order dated August 26, 1987 respecting these four defendants. The district court in Milligan's case "clearly evidenced its intent that the opinion and order from which an appeal was taken would represent the final decision in the case." 435 U.S. at 387, 98 S.Ct. at 1121. Additionally, in both cases, a judgment of dismissal was recorded in the clerk's docket, and in Eng v. Milligan, a judgment of dismissal was recorded on a separate document designated as a judgment.
 
 
 24
 Moreover, the lack of a "final judgment" under Sec. 1291 or a Rule 54(b) certification is not fatal when the issues involved in such appeal are identical to the issues involved in an appeal in the same case over which we already have jurisdiction. Barrett v. United States, 798 F.2d 565, 571 (2d Cir.1986). Instead of certifying the partial disposition in Eng v. Milligan and directing the entry of judgment according to Rule 54(b), the district court simply entered judgment and let the finality of the partial dismissal speak for itself. Thus, we conclude that the judgment is appealable under Fed.R.Civ.P. 54(a).
 
 
 25
 Under present circumstances therefore there is no reason for entertaining Eng's appeal from the grant of summary judgment in Milligan's favor and not entertaining the appeals by Adler and Scully from the denial of their motions for summary judgment.
 
 
 26
 II. Qualified Immunity and Eleventh Amendment Defenses
 
 A. Qualified Immunity
 
 27
 We turn to the merits of the qualified and Eleventh Amendment immunity defenses. The qualified immunity doctrine protects a government official performing discretionary functions from liability to the extent that his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738; see Musso v. Hourigan, 836 F.2d at 741-42. The doctrine protects public officials from personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service. It also safeguards the public interest in having its employees act " 'with independence and without fear of consequences.' " Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967) (quoting Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868)).
 
 
 28
 We held recently that there are several ways in which a public official may establish his qualified immunity defense. See Robison v. Via, 821 F.2d 913, 920 (2d Cir.1987). In that case, we stated that the defense should bar suit if a trial court finds that, at the time when the defendant official acted, it was unclear whether plaintiff's asserted interests were protected by federal law. Id. We also observed that summary judgment on qualified immunity grounds ought to be granted when a district court judge concludes that an official could have reasonably believed that his actions did not contravene an established federal right. Id. at 921.
 
 
 29
 Further, the defense of qualified immunity is not overcome when those federal rights exist only generally in the air, so to speak. In Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court rejected the notion that alleged violations of abstract rights could defeat the immunity defense. Id. at 3038-39. In short, the boundaries of the supposed "right" must be sufficiently definite so that the official understood that his actions violated it or, in other words, that the unlawfulness of his actions was evident.
 
 
 30
 It is our practice in this Circuit when a district court fails to address the qualified immunity defense to remand for such a ruling. See, e.g., Francis v. Coughlin, 849 F.2d 778, 780 (2d Cir.1988) (per curiam); Musso, 836 F.2d at 744. In the present case, Judge MacMahon found that Eng's claims raised sufficient issues of fact to preclude summary judgment for Adler and Scully. Accordingly, he did not consider the qualified immunity defenses raised by those two defendants. Consistent with past practice therefore we remand Eng v. Scully and Adler to the district court for it to rule on their claims of qualified immunity.
 
 
 31
 Eng's appeal from summary judgment in favor of Milligan does not require a similar remand. For reasons stated later in this opinion, we agree with Judge MacMahon that Eng's claim against Milligan does not raise any material issues of fact, and summary judgment was properly entered in his favor. Milligan's omissions in 1983 did not then constitute a violation of Eng's "clearly established" rights, and Milligan could properly invoke the defense of qualified immunity from suit.
 
 B. Eleventh Amendment Immunity
 
 32
 We turn now to the claim of Eleventh Amendment immunity. The Amendment itself states
 
 
 33
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 34
 The Eleventh Amendment was added to the Constitution as a result of the Supreme Court's holding in Chisholm v. Georgia, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793). In that case the Supreme Court took jurisdiction over a suit by the estate of a citizen of South Carolina against the State of Georgia for war materials supplied during the Revolution, but for which he had not been paid. The Supreme Court's assumption of jurisdiction was speedily overturned by the adoption of the Eleventh Amendment. Although the Amendment's language bars only an action by citizens of one State against another State, nearly 100 years ago it was held that the Amendment also bars suits against a State by its own citizens. See Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).
 
 
 35
 We start with the proposition that a State's sovereign immunity limits federal judicial power, which leads logically to a rule that a State may not be sued in the federal forum, absent its consent or explicit congressional action abrogating a State's immunity. Where the State itself is not a named defendant, and instead a state official is named, the Eleventh Amendment becomes less coherent. In the landmark case of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), railroad stockholders sought a federal injunction against Minnesota Attorney General Edward T. Young to prevent him from imposing Draconian penalties on certain railroads that sought judicial review of state imposed rates. Young claimed immunity from suit under the Eleventh Amendment. The Supreme Court held that the Amendment was not a bar, reasoning that because an unconstitutional state law is void, any action by a state official under it cannot be in his official capacity. Such official must therefore be acting in his individual capacity and not as an agent for the State, in which case the Amendment was not a bar to the suit. Id. at 159-60, 28 S.Ct. at 453-54. The rationale of Young was somewhat narrowed in Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In Pennhurst the Court held that the Eleventh Amendment prohibits federal courts from ordering state officials to conform their conduct to state law. Where federal interests are secure, and when the only violations alleged are those of state law, the Eleventh Amendment is a bar to suit. Id. at 105-06, 104 S.Ct. at 910-11.
 
 
 36
 More recently in Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), in a suit brought by school officials and school children challenging Mississippi's distribution of public school land funds, the Supreme Court clarified some of the earlier distinctions in Eleventh Amendment cases. In Papasan the Court held that petitioner's trust claims were barred by the Amendment, but that their equal protection claims were not. Because the latter constituted an ongoing constitutional wrong, a remedy under Ex parte Young could properly be fashioned. Id. at 281-82, 106 S.Ct. at 2942-43. The critical question in determining whether the Eleventh Amendment bars suit is whether it is necessary for federal courts to vindicate the supremacy of federal rights as in Young. Suits brought to end a continuing constitutional violation are permitted, while those seeking compensation for past injuries are prohibited under the Amendment. See Green v. Mansour, 474 U.S. 64, 71, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985). Papasan further instructs us that a suit brought by a party for damages for past injuries against a state official in his official capacity for actions illegal under federal law is barred, even when the state official is the named defendant. It is only when the state official is sued and held liable in his individual capacity that the suit may lie. See Papasan, 478 U.S. at 278 & n. 11, 106 S.Ct. at 2940 & n. 11.
 
 
 37
 From this it can be seen that Eleventh Amendment jurisprudence has not been a model of logical symmetry, but marked rather by a baffling complexity. See J. Orth, The Judicial Power of the United States--The Eleventh Amendment in American History (1987). This is not an appropriate occasion therefore to depart from our usual practice of remanding this unaddressed issue to the district court for it to consider Eleventh Amendment immunity in the first instance. See Smith v. Reagan, 841 F.2d 28, 31 (2d Cir.1988).
 
 III. Summary Judgment in Milligan's Case
 
 38
 A. Appropriate on Grounds of Qualified Immunity
 
 
 39
 Eng's appeal from summary judgment in favor of Milligan presents a different picture. The district court there ruled as a matter of law that Eng's claims against Milligan, even if true, do not rise to the level of a constitutional violation under Wolff. This ruling effectively determines that Milligan is entitled to qualified immunity because no construction of the alleged facts could demonstrate that in 1983 Milligan violated Eng's established constitutional right to assistance.
 
 
 40
 As the district court recognized, a prison inmate facing a disciplinary hearing is only entitled to assistance from a fellow inmate or a prison employee under certain circumstances. For example, when the inmate is illiterate or the issues extremely complex. Wolff, 418 U.S. at 570, 94 S.Ct. at 2981. The hearing transcript and pleadings demonstrate that Eng is not illiterate and that he understood the charges against him. Thus, he was not, at the time when these events occurred in 1983, deprived of any assistance due him as a matter of clearly established constitutional right. See Weber v. Dell, 804 F.2d 796, 803 (2d Cir.1986) (requiring an appropriately direct prior holding by federal courts as a prerequisite to finding "clearly established" rights), cert. denied, --- U.S. ----, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); see also Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); Robison v. Via, 821 F.2d 913, 920 (2d Cir.1987). Because the interest asserted by Eng was not "clearly established," and therefore not protected at the time of Milligan's omissions, we affirm Judge MacMahon's ruling that granted summary judgment dismissing Eng's claim against Milligan for failure to provide assistance.
 
 B. Future Cases
 
 41
 In our view that does not end the matter. Confinement in SHU is a factor which, like illiteracy or complexity of charges, makes it nearly impossible for an inmate to formulate a defense, collect statements, interview witnesses, compile documentary evidence, and otherwise prepare for a disciplinary hearing. Although we recognize that inmates are not entitled to the full panoply of rights involved in a full-scale criminal proceeding, see Wolff, 418 U.S. at 556, 94 S.Ct. at 2974, the list of disabling factors in Wolff which trigger the right to some assistance in preparation for constitutionally-mandated procedures is not exclusive.
 
 
 42
 Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges. No additional procedures are required to implement that obligation. When the inmate is disabled, either by being confined full-time to SHU or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced. See Aikens v. Lash, 514 F.2d 55, 59 (7th Cir.1975), vacated on other grounds, 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976). If the inmate's right to marshal evidence and present a defense to charges of breaches of prison disciplinary rules is to mean anything, then an inmate so disabled must be provided with some assistance. Although this is not the occasion to define the assigned assistant's precise role and the contours of the assistant's obligations, such help certainly should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses. At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself.
 
 
 43
 Green Haven procedures provide for certain assistance to be made available to inmates facing disciplinary hearings. Specifically, on the form which Superintendent Scully used to appoint Milligan as Eng's assistant, the printed instructions read:
 
 
 44
 You are to explain the nature of the proceeding and the charges to the inmate. You [are to] ask the inmate whether there is any factual matter that can be presented in his [defense] and you shall investigate any reasonable factual claim the inmate may make.
 
 
 45
 Here, providing no assistance whatsoever was a breach of Milligan's duty to assist Eng.
 
 
 46
 Apart from reporting the action taken and the results of the investigation, an inmate or prison employee assistant currently has no affirmative obligation to perform investigatory tasks. As illustrated by this case, doing nothing--and reporting it as such--appears to satisfy the current institutional guidelines for inmate assistance.
 
 
 47
 We think that for inmates disabled by confinement in SHU, or transferred to another facility, the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment. See Wolff, 418 U.S. at 556-72, 94 S.Ct. at 2974-82 (inmates entitled to certain minimal due process requirements relating to prison disciplinary hearings). Further, the assistance must be provided in good faith and in the best interests of the inmate. For example, an assistant, such as Milligan, who is requested to interview a group of prisoners too numerous to interview must attempt to determine independently who the most relevant witnesses might be and to interview them. This role accords with those actions that an inmate facing disciplinary charges can undertake himself simply by asking guards and fellow inmates if they observed the incident. In sum, we hold that an assigned assistant who does nothing to assist a disabled prisoner--one who is segregated from the general prison population--has failed to accord the prisoner his limited constitutional due process right of assistance.
 
 CONCLUSION
 
 48
 Accordingly, this case is remanded to the district court to rule on the qualified and Eleventh Amendment immunity defenses raised by defendants Adler and Scully. We affirm on qualified immunity grounds the district court's dismissal of Eng's civil rights action against Milligan.
 
 
 49
 Eng v. Milligan affirmed. Eng v. Adler and Scully reversed and remanded.