Bashir HAMEED a/k/a James
York, Plaintiff,

v.

Louis MANN, et al., Defendants.

No. 89–CV–578.

United States District Court,
N.D. New York.

April 29, 1994.

Prisoners' Legal Services of New York (Deborah Schneer, Kenneth Stephens, of counsel), Poughkeepsie, NY, for plaintiff.

Atty. Gen. of State of N.Y. (Meredith Savitt, of counsel), Albany, NY, for defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

The present action is before the court upon two motions, both filed by plaintiff, Bashir Hameed (hereinafter "plaintiff"). The first motion is to set aside the verdict of the jury and to enter a judgment in favor of the plaintiff, a procedure provided by Rule 50(b) of the Federal Rules of Civil Procedure. In the event the first motion is denied, plaintiff makes an alternative second motion to set aside the verdict of the jury and the judgment entered thereon and to grant a new trial, a procedure provided by Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

On May 8, 1989, plaintiff commenced the instant action alleging violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate at the Shawangunk Correctional Facility, claimed that in October of 1988, while he was confined to the B–2 company of the facility, his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated as a result of a misbehavior report he received and also as a result of the subsequent superintendent's hearing held by de-

fendant McGinnis. More specifically, plaintiff alleged that (1) it was improper for defendants to serve him with a misbehavior report which was identical to misbehavior reports served on other inmates who were also confined in B–2 because the report gave plaintiff insufficient notice of the charges brought against him; (2) it was improper for the defendants to illegally deny plaintiff his right to an employee assistant to assist him in preparing for the disciplinary hearing; (3) it was improper for defendant McGinnis to serve as an impartial hearing officer because of his partiality resulting from a briefing given by defendant Mann; (4) it was improper for defendants to deny plaintiff his right to present documentary evidence during the disciplinary hearing; and (5) it was improper for the defendants to hold the disciplinary hearing in an untimely fashion.

The plaintiff also claimed that it was improper for the defendants to issue a misbehavior report and subject plaintiff to a disciplinary hearing because such actions had a chilling effect on his freedom of speech guaranteed under the First Amendment of the United States Constitution. Furthermore, plaintiff claims that the State regulation under which he was punished, Rule 104.12, is unconstitutionally over-broad and vague and thus, is violative of the First and Fourteenth Amendments.

On October 26, 1993, a jury trial commenced before the undersigned. Upon defendants' motion pursuant to Rule 50 of the Federal Rules of Civil Procedure, the court dismissed the complaint as against defendants Coughlin and Selsky. Defendant Coughlin was dismissed from the case because his personal involvement in the complained of events were not sufficiently established. Further, defendant Selsky was dismissed from the case because the court concluded that his involvement in the administrative disciplinary process utilized throughout the New York State prison system as applied to the plaintiff warranted a decision that he be absolutely immune from liability under 42 U.S.C. § 1983. This was because defendant Selsky's involvement in this case was akin to that of a judge who is protected by absolute immunity.

On November 4, 1993, the jury returned a verdict in favor of the remaining defendants on all claims. On November 9, 1993, the Office of the Clerk in Binghamton, New York, entered the judgment thereon. By Notice of Motion dated November 17, 1993, plaintiff seeks to have the verdict set aside and judgment as a matter of law entered in his favor, or in the alternative, a new trial granted pursuant to Fed.R.Civ.P. 50(b) and 59(a). Furthermore, plaintiff seeks an amendment of the judgment under Fed.R.Civ.P. 59(e) and 60(a).

## II. DISCUSSION

The Second Circuit has clearly enunciated the standard for granting a judgment as a matter of law. The court in *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163 (2d Cir.1980), stated that,

> the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all reasonable inferences), the trial court should grant a judgment n.o.v. only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Id.* at 167–68; *see Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688–89 (2d Cir.1983). Rule 50 of the Federal Rules of Civil Procedure governs the procedure for removing a judgment from the verdict-winner by the use of either a motion for a directed verdict pursuant to Rule 50(a), or a motion for a judgment notwithstanding the verdict pursuant to Rule 50(b). Fed.R.Civ.P. 50; *see Samuels*, 992 F.2d at 14. The court is mindful of the fact that effective December 1, 1991, Rule 50's use of the term "judgment not withstanding the verdict" was abandoned for the term "judgment as a matter of law,"

but it is noted that the standard for granting the motion has not altered in any way. *See* Fed.R.Civ.P. 50 Advisory Committee's note, 1991 Amendment.

A less stringent standard applies to a motion to set aside the verdict and for a new trial pursuant to Rules 50(b) and 59(a). "A trial court should grant such a motion when convinced that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1987); *see Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 132 (2d Cir.1986). It is now well settled law that a trial judges's disagreement with the jury's verdict is not sufficient reason alone to grant the motion for a new trial. *Mallis*, 717 F.2d at 691; *see Saloomey v. Jeppesen & Co.*, 707 F.2d 671, 679 (2d Cir.1983). It is in light of these standards in which the court determines plaintiff's two pending alternative motions.

### A. ADEQUATENESS OF THE NOTICE PROVIDED TO THE PLAINTIFF

■ Initially, plaintiff contends that the misbehavior report he was provided with prior to the hearing gave him inadequate notice of the charges brought against him because it was virtually identical to other reports issued to inmates on B–2, and also because it contained no particularized reference that plaintiff was being charged as a leader in the incident. Thus, it is contended that since defendants' only evidence on this claim was reliance on the language of the rule itself, there is "no legally sufficient evidence from which a reasonable jury could conclude that the misbehavior report constituted adequate notice to plaintiff." (Schneer Affdvt. ¶¶ 9(c), 9(d)).

The defendants, of course, allege otherwise. The defendants claim that the plain meaning of the words set forth in the misbehavior report was sufficient notice given to plaintiff of the charges brought against him, and thus, no constitutional violation occurred with regard to the issuance of the misbehavior report. The court agrees with the defendants.

■ The primary reason why prison officials are required give adequate notice to a prisoner before a disciplinary hearing is to give the charged party, here the plaintiff, "a chance to marshall the facts in his defense and to clarify what the charges are, in fact." *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). Thus, a notice lacking the required specifics which fail to apprise the accused party of the charges brought against him must be found to be unconstitutional because then, the accused party cannot adequately prepare a defense. *See Spellmon–Bey v. Lynaugh*, 778 F.Supp. 338, 342 (E.D.Tex.1991). Such is not the case here.

When the misbehavior report in question is read in its totality, certain things become apparent. At the top, the report recites the State Regulation under which plaintiff was accused of violating; it states:

> 3) Rule Violation(s)—[Rule] 104.12 Inmates shall not lead, organize, participate or urge other inmates to participate in work stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility.

When this section is read in conjunction with the section labeled "Description of Incident,"[1] the report clearly gives plaintiff notice of the charges brought against him. The "Description of Incident" section specifies the dates of the alleged activities and the activities which plaintiff was being charged

---

1. The section reads:

   Description of Incident—Beginning with the A.M. program period on Wednesday 10/5/88 and through Friday, 10/7/88 this inmate and all other inmates in housing unit B–2 refused to participate in normal program assignments. He did so by locking in his cell and refusing to leave during program periods.

   His actions, in concert with the actions of all other inmates on Housing unit B–2 led to a deterioration of conditions (i.e. loud chanting, the throwing of refuse on the tiers, collective disobedience during meal runs and general refusal to follow the direct orders of staff) which led to the determination by the Superintendent that a State of Emergency existed on Housing Unit B–2 on Friday, 10/7/88. Inmate York continues to participate in this unauthorized activity to this date.

with. Furthermore, the language of Rule 104.12 unequivocally apprised plaintiff that he was being charged with leading, organizing or participating in the unlawful activities. This language gave plaintiff adequate notice that he was being charged with leading, organizing or participating in the activities complained of. These are three different alternative theories under which plaintiff was charged. Thus, the face of the misbehavior report amply supports the jury's finding that the report adequately gave plaintiff notice of the charges brought against him, and furthermore, the court is not convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.

■ The plaintiff argues that because all other inmates on B–2 received identical, or virtually identical, misbehavior reports, *a fortiori*, this is an indication that the report failed to adequately give notice to the plaintiff. This argument is footless. The plaintiff has not cited to one case where such reports are prohibited. Moreover, as stated earlier, the essential function of a misbehavior report is to apprise the accused party of the charges brought against him, *Spellmon–Bey*, 778 F.Supp. at 342, and this the instant report has done.

### B. IMPARTIALITY OF THE HEARING OFFICER

■ The plaintiff has also alleged that defendant McGinnis, the hearing officer presiding over plaintiff's hearing, was not an impartial hearing officer as required under the laws. It is alleged that McGinnis' impartiality was compromised by the off-the-record pre-hearing "briefing" by defendant Mann who met with all of the hearing officers prior to the hearings. This allegation stems from Mann's admission that he told McGinnis and other hearing officers that everyone on B–2 had participated in the incident. This statement coupled with Mann's position of authority as the Superintendent of the correctional facility is alleged to have had the potential for undue influence. Consequently, it is alleged that this appearance of impropriety may have crossed constitutional boundaries.

Plaintiff's allegation wholly ignores the evidence presented at trial. Although Mann had indeed met with McGinnis prior to the hearing, Mann had testified during trial that the purpose of their meeting was merely to give McGinnis a general overview of the situation in B–2 and the mechanics of getting through the hearings. It was necessary to brief McGinnis because he had been sent from another facility to help conduct hearings. McGinnis testified during trial that he did not even know why he had been sent to the facility. Accordingly, looking at the facts presented, there is no indication that the meeting between Mann and McGinnis played any role in McGinnis' impartiality. This conclusion is further supported by McGinnis' own testimony: McGinnis testified that he never had any discussion with anyone about the outcome of a particular hearing and that the ultimate decision was his to make as the Hearing Officer. Additionally, he testified that his determination was based solely on the evidence presented to him and not on any other outside factors.

Clearly, there is evidence to support the jury's verdict in the case at bar. Moreover, this court is not convinced that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice. *See Katara*, 835 F.2d at 970. Hence, plaintiff's motions made on ground of hearing officer's partiality is denied.

### C. DENIAL OF AN EMPLOYEE ASSISTANT

■ The plaintiff has advanced two alternative theories on his claim that he was denied an employee assistant. First, he claims that he was entitled to an employee assistant because he was confined to formal keep-lock status prior to his hearing. Alternatively, plaintiff claims that even assuming, *arguendo*, that he was not in formal keep-lock status, he was still entitled to an employee assistant because he was "constructively" confined whereby he was not given an opportunity to prepare for his own defense.

■ In this circuit, an inmate's right to an employee assistant while being in confinement has been well established. *See, e.g., Eng v. Coughlin*, 858 F.2d 889, 897–98 (2d Cir.1988). The court in *Eng* stated that

[w]hen [an] inmate is disabled, either by being confined full-time to SHU or transferred from the prison in which the incident occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced. *Aikens v. Lash*, 514 F.2d 55, 59 (7th Cir.1975), *vacated on other grounds*, 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976). If the inmate's right to marshall evidence and present a defense to charges of breaches of prison disciplinary rules is to mean anything, then an inmate so disabled must be provided with some assistance.

*Eng*, 858 F.2d at 897–98. The right to an employee assistant, however, does not exist when an inmate is free to do his own investigative work. *Cf. id.*

It is undisputed that plaintiff was not provided with an employee assistant. What is in dispute is whether plaintiff was so confined that he was not able to do his own investigative work as to give rise to a right to an employee assistant.

From the evidence submitted at trial, it is apparent that the plaintiff was not confined to his cell for the whole time between the time he received his misbehavior report to the time of the actual hearing itself. The evidence shows that plaintiff was served with the misbehavior report on October .19, 1988 at approximately 7:47 a.m. but was not confined to keep-lock status until 11:15 a.m. the following day, October 20, 1988.[2] This confinement lasted until the date of the hearing. The reason for the 27 hour delay was that the misbehavior report of October 19 was a "non-confinement" report which meant that plaintiff would not be confined upon its service. Defendants thus allege that since plaintiff had over 24 hours of non-confinement in order to prepare for his own defense, he was not entitled to an employee assistant. Plaintiff, of course, disagrees. Plaintiff contends that the fact that plaintiff had 27 hours of non-confinement is not at all relevant to his employee assistant claim in light of the fact that he was confined for the following six days prior to his hearing. He further contends that the 24 hour rule cited by defen-

dants is inapplicable because the said rule refers to the notice requirement as set forth under *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974), and as such, the said rule does not concern itself with plaintiff's employee assistant claim.

■ Although plaintiff is correct in his reading of *Wolff*, he is incorrect in arguing that *Wolff*'s 24 hour rule is wholly inapplicable to the employee assistant analysis. This is because the 24 hour notice rule necessarily intertwines with the employee assistant rule; for example, if an inmate is given only 24 hours between the time he receives the misbehavior report and the time of the disciplinary hearing, then the inmate would, at a maximum, have 24 hours to do his investigative work. Such a scenario would not violate any constitutional standards. But what if the inmate is given more than 24 hours—e.g. two months—between the time he or she receives the misbehavior report and the time of the disciplinary hearing? Would the inmate have the right not to be confined for that whole duration so that he or she may do his or her own investigative work or else be provided with an employee assistant during such time? Clearly the answer is no. But, this is exactly what the plaintiff is arguing.[3]

■ When the *Eng* decision is read in light of the *Wolff* decision, it is clear that plaintiff's contention is footless. Since the *Wolff* decision lays down the minimum notice requirement to ˙24 hours, this necessarily must mean that the inmate is entitled to an employee assistant only if he has less than 24 hours to do his own investigative work due to confinement in an SHU or due to the fact that he has been transferred out of the institution in which the disciplinary proceeding is pending. Hence, if the inmate is put on notice with a misbehavior report more than the required 24 hours in advance of the disciplinary hearing, and if the inmate is given the minimum 24 hours to do his own investigative work, then, an inmate's right to an employee assistant would not arise. This

---

2. Plaintiff was confined on this date on an unrelated charge.

3. The plaintiff, however, fails to cite to any case law to support such a proposition.

would be the logical conclusion when *Eng* is read in conjunction with *Wolff.*

In the case at bar, evidence was submitted to demonstrate that plaintiff had over 27 hours to do his own investigative work between the time he received his misbehavior report and the date of the disciplinary hearing.[4] Thus, plaintiff's right to an employee assistant never arose. The fact that he was confined for seven of the eight days in the interim is of no consequence because plaintiff was given the required minimum hours to do his own investigative work.

■ Plaintiff argues that even assuming, *arguendo,* that an inmate is not entitled to an employee assistant because he or she is not confined to SHU for a period of 24 hours between the time he or she receives notice of the charges and the actual date of the hearing, plaintiff was still entitled to an employee assistant because he was constructively confined during the 27 hours in question here.

Such contention is without merit. Defendants have submitted evidence through the testimony of witnesses that plaintiff, as well as other inmates, was allowed to participate in a variety of activities during the 27 hours in question. Furthermore, there was also evidence that plaintiff was actually able to do some of his own investigative work during this time period. Thus, there was enough evidence for the jury to reasonably conclude that plaintiff's confinement during this time period did not rise to the level of giving plaintiff the right to an employee assistant.

There was sufficient evidence to support the jury's verdict and this court is not convinced that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice. *See Katara,* 835 F.2d at 970. Therefore, plaintiff's motions made on the basis of failure to be provided with an employee assistant are denied.

## D. THE RIGHT TO PRESENT DOCUMENTARY EVIDENCE

■ The plaintiff has also asserted that his right to certain documentary evidence was violated when the defendants denied him access to such evidence in his hearing. More specifically, plaintiff contends that he was denied access to certain reports and videotapes which were crucial in his attempt to marshall the facts and present a defense.

Let us first begin with the investigatory reports. The facts clearly show that plaintiff had in fact requested these reports during his disciplinary hearing, but such request was denied because defendant McGinnis was concerned with the confidentiality of these reports. It is plaintiff's contention that defendant McGinnis improperly denied his request without even checking to see if any of the documents he requested contained confidential information.

A closer examination of the hearing transcript does not support plaintiff's contention. The transcript of the disciplinary hearing reveals that defendant McGinnis did indeed deny plaintiff's request but did so because the reports plaintiff was seeking had confidential information such as names of informants and information on certain inmates. This information was protected by the Freedom of Information Law ("FOIL"). Defendant McGinnis did testify, however, that he advised plaintiff to contact defendant Mann, who was the Superintendent of the facility, if he wished to pursue the document request. Defendant McGinnis even offered to adjourn the hearing itself while plaintiff made such a request. Plaintiff denied this offer. Defendant McGinnis further testified that plaintiff knew his offer to adjourn the hearing was a sincere one since the hearing had actually been adjourned once before in order to accommodate plaintiff's request that certain hearing officers testify.

Based on such testimony, there is ample evidence to support the jury's verdict that plaintiff was not denied his right to certain documentary evidence: The plaintiff was given opportunity to pursue the document request and yet failed to do so. Based on these facts, there simply is no manifest injustice in the jury's verdict to warrant the granting of a new trial on this issue.

■ The same conclusion must be reached with respect to plaintiffs' alleged

---

4. There were eight days during this time period.

request for videotapes. There was evidence introduced at trial—testimonial and documentary—which indicated that the plaintiff never in fact requested the production of the videotapes in question. Thus, it was reasonable for the jury to accept such evidence and to accordingly determine that plaintiff was not denied his right to these videotapes. Based on these findings, plaintiff's alternative motions grounded in alleged violations of his right to documentary evidence are denied.[5]

### III. CONCLUSION

It is the court's determination that plaintiff failed to satisfy the lower, less stringent standard required for granting of a motion for a new trial as to all of his claims. Therefore, plaintiff's two motions pled in the alternative must be denied in their entirety.

**IT IS SO ORDERED.**

---

5. Plaintiff counsel's affidavit lists four additional grounds in support of his motion for a new trial. Plaintiff, however, has failed to give the court the legal basis for such a motion: Plaintiff's memo-

randum in support of his motion is void of any such argument. Therefore, the court did not entertain these four grounds.