**Bradshaw SAMUELS, Plaintiff,**

v.

**Eugene S. LeFEVRE; Thomas A. Coughlin, III; Donald Selsky; A. Trudo; Joseph G. Woods; R. Dubrey; B.B. Stevens; Rojer Nelson; W. Orchard; Mark Drown; John Landry; Joseph Pecore; Charles Staves; James Blair; Freeman Suppley; Robert Ayotte; Thomas Tender; William Rief; Vernal Favreau; and Unknown Correctional Officers, Defendants.**

No. 88 Civ. 981.

United States District Court,
N.D. New York.

March 14, 1995.

**34**

Bradshaw Samuels, Washingtonville, NY, pro se.

Darren O'Connor, Asst. Atty. Gen., Office of Atty. Gen., State of N.Y., Dept. of Law, Albany, NY, for defendants.

## OPINION AND ORDER

BAER, District Judge.

Bradshaw Samuels, *pro se*, a former state prisoner, brought this action under 42 U.S.C. § 1983 alleging that certain defendants used excessive force to restrain him during an August 1985 incident at Clinton Correctional Facility ("Clinton"), and that other defendants violated several of his Fourteenth Amendment due process rights during two disciplinary hearings resulting from that incident. Samuels seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Defendants moved to dismiss plaintiff's complaint, pursuant to Fed.R.Civ.P. 12(b)(6), claiming that it failed to state a valid claim. On September 19, 1990, then Chief Judge Neal P. McCurn, N.D.N.Y., dismissed, *inter alia*, the assault claim as to defendant Thomas A. Coughlin, III, New York State Corrections Commissioner, and all due process violations claims against all defendants except for the denial of Samuels' right to call a witness at the hearing.

Defendants Coughlin, Donald Selsky, Director of Housing and Inmate Discipline, and Armond Trudo, a correctional officer at Clinton, now move for summary judgment, pursuant to Fed.R.Civ.P. 56(b), claiming that no genuine issues of material fact exist regarding Samuels' due process claim, the only claim remaining against these three defendants. Also before this court is Samuels' motion to compel defendant Trudo to answer interrogatories.

For the reasons that follow, defendants' motion for summary judgment is GRANT-ED, and Samuels' motion to compel is DENIED.

## I. *Facts*

On August 22, 1985, an altercation occurred between an inmate, Ali Q. Abdullah, and corrections officers in the Clinton recreation yard. Abdullah, apparently bleeding from the face due to injuries sustained during a recent fight with other inmates, approached officers Mark Drown and John Landry with rocks in his hands. After Abdullah ignored the officers' orders to drop the rocks and started running toward them, Officer Landry wrestled Abdullah to the ground. While Officer Drown tried to pry the rocks from Abdullah's clenched fists, Samuels pulled at Drown's shirt and exhorted the officers to leave Abdullah alone. Despite Samuels' refusal to follow Officer Drown's repeated orders to leave the area, the officers eventually managed to restrain Abdullah.

Due to his interference in the Abdullah incident, the officers removed Samuels from the yard and escorted him to the commissary for a "pat frisk." Samuels, however, refused to cooperate and attacked Officer Drown. The officers again restrained Samuels, resulting in injuries to Samuels that required treatment at the infirmary. While at the infirmary, Samuels was restrained a third time because he refused to remain on the stretcher.

Samuels' actions violated a host of prison rules, resulting in the filing of several disciplinary charges against him. On September 4, 1985, Captain Trudo held a disciplinary hearing. At the hearing, Samuels asked to call as witnesses Abdullah, Officer Drown and Officer Nolan, who allegedly was stationed at one of the guard posts in the prison yard during the incident. Captain Trudo informed Samuels that Officer Nolan was on vacation and unavailable to attend the hearing but that he, Trudo, would interview Nolan on tape outside of Samuels' presence and asked Samuels what questions he wanted Officer Nolan to answer. Samuels posed, *inter alia*, the following questions for Nolan: whether he saw Abdullah bleeding; whether the wound appeared to be self-inflicted; what

information he relayed, and to whom, concerning the incident; and whether he saw officers restrain Abdullah. Affirmation of Darren O'Connor in support of defendants' motion for summary judgment, April 30, 1993, Ex. B at 53–54 ("O'Connor Aff.").

A few days later, Captain Trudo conducted a taped interview with Abdullah and played the tape for Samuels. Abdullah stated that he was cut by other inmates; that officers did not attack him but instead tried to convince him to drop the rocks; that six or seven officers tried to subdue Abdullah; and that Samuels and another inmate told Abdullah to calm down. O'Connor Aff., Ex. B at 57–58. Captain Trudo then told Samuels that because the information Samuels sought to elicit from Nolan was similar to the information provided by Abdullah, Trudo would not allow Samuels to call Nolan as a witness. O'Connor Aff., Ex. B at 58.

On September 13, 1985, Captain Trudo found Samuels guilty of two counts of assault, three counts of refusing a direct order, and one count of verbal harassment. He imposed upon Samuels a penalty of one year cell confinement, loss of privileges and recommended loss of good time. O'Connor Aff., Ex. B at 65–66. Donald Selsky, the Director of Special Housing and Inmate Discipline, administratively affirmed the disposition on November 25, 1985. O'Connor Aff., Ex. A.

Approximately three years later, Samuels commenced this civil rights action alleging that certain defendants used excessive force while restraining him, and that Commissioner Coughlin and Superintendent LeFevre were liable for the use of excessive force due to their supervisory capacity. Plaintiff also raised several due process claims, including Captain Trudo's failure to allow him to call Officer Nolan as a witness at the September 1985 disciplinary hearing.

Defendants moved to dismiss the complaint for failure to state a valid claim. By incorporating a June 28, 1990 Report–Recommendation, Judge McCurn (1) allowed the excessive force claim against Superintendent LeFevre and the officers personally involved in the alleged use of force; (2) dismissed the excessive force claim against Coughlin; and (3) dismissed all due process claims except the claim regarding the denial of Samuels' right to call officer Nolan as a witness at the September 1985 disciplinary hearing.

## II. *Discussion*

Samuels' only remaining claim against defendants Coughlin, Selsky and Trudo, and the only issue before this court, is the alleged violation of his procedural due process right to call Officer Nolan to testify at the September 1985 disciplinary hearing. Defendant Coughlin argues that he had no involvement in the alleged due process violation and, therefore, the qualified immunity doctrine shields him from liability. Similarly, defendants Selsky and Trudo contend that no due process violation occurred because officer Nolan's testimony was unnecessary and duplicative. In the alternative, Selsky and Trudo maintain that even if Samuels' due process right was violated, the qualified immunity doctrine protects them from liability because this right was not clearly established at the time of the hearing.

### A. *Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. School Dist.,* 963 F.2d 520, 523 (2d Cir.1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### B. *Claim against Coughlin*

Samuels contends that Commissioner Coughlin is liable in his supervisory capacity under a theory of *respondeat superior* for the alleged violations committed by his subordinates: Captain Trudo's refusal to call Officer Nolan as a witness, and Director Selsky's failure to remedy the "wrong" after only a summary review of the disposition.

■ It is well settled that the doctrine of *respondeat superior* is inapplicable to Section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453–54, 70 L.Ed.2d 509 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The personal involvement of a defendant is a prerequisite for the assessment of damages in Section 1983 claims. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). In addition, a supervisory official can be held to have been personally involved in a constitutional violation if the official (1) failed to remedy the wrong after learning of the violation through a report or appeal; (2) created a policy or custom under which constitutional violations occurred, or allowed the custom or policy to continue; or (3) was grossly negligent in managing subordinates who committed the violation. *Williams*, 781 F.2d at 323–24.

■ Here, Samuels does not plead or offer any evidence to support the contention that Commissioner Coughlin was personally involved in the September 1985 disciplinary hearing. Nor is there anything in the record to suggest that Coughlin directly participated in the hearing, learned of the alleged violation and did nothing, created a policy or custom fostering constitutional violations, or grossly mismanaged his subordinates. *See, e.g., Parris v. Coughlin*, Civ. No. 90–414, 1993 WL 328199, at * 3 (N.D.N.Y. Aug. 24, 1993) (refusing to hold Coughlin liable where plaintiff failed to allege that Coughlin was grossly negligent in his supervision of Selsky). Accordingly, summary judgment is granted as to defendant Coughlin.

### C. *Claims Against Selsky and Trudo*

Samuels' claim against Director Selsky is based on Selsky's failure to remedy the alleged due process violation. *Williams*, 781 F.2d at 323. His claim against Trudo rests on Trudo's failure to call Officer Nolan as a witness, as the plaintiff requested. *Id.* These claims present a more difficult question.

■ The Supreme Court originally recognized a prisoner's qualified right to call witnesses at a disciplinary hearing in *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979–80, 41 L.Ed.2d 935 (1974). According to the Court, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.; see also McCann v. Coughlin*, 698 F.2d 112, 123 (2d Cir.1983) (inmates have a qualified right to present witnesses at disciplinary hearings so long as prison security is not jeopardized). The Court has also suggested that prison officials may refuse to call a requested witness whose testimony might be irrelevant or unnecessary. *Ponte v. Real*, 471 U.S. 491, 496, 105 S.Ct. 2192, 2195–96, 85 L.Ed.2d 553 (1985); *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979–80; *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.1991).

In the instant action, Captain Trudo stated on the record during the disciplinary hearing his reason for refusing to call Officer Nolan to testify: "[T]he questions you [Samuels] wish to ask Officer Nolan had been answered by your inmate witness." O'Connor Aff., Ex. B at 58. Although Samuels' questions for Abdullah and Nolan were similar, this Court will not assume that their answers would have been the same. It is possible that Nolan saw things differently. Moreover, any testimony by Nolan, a prison guard, supporting Samuels' defense would arguably have had a much greater effect on Captain Trudo, the hearing officer, than favorable testimony from Abdullah, an inmate. A quick taped telephone interview with Nolan would have effectively determined whether his testimony indeed would have been cumulative without

unduly burdening Clinton's prison administration. N.Y.Comp.Code R. & Regs. tit. 7, § 254.5(b) (1991) ("[w]here an inmate is not permitted to have a witness present, such witness may be interviewed out of the presence of the inmate and such interview tape recorded.").

 Trudo and Selsky further argue that the doctrine of qualified immunity protects them from liability. In actions brought under Section 1983, qualified immunity is an affirmative defense that must be pleaded by the defendant officials. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *Security and Law Enforcement Employees Dist. Council 82 v. Carey,* 737 F.2d 187, 210 (2d Cir.1984). Once qualified immunity is pleaded, as it has been in this action, public officials performing discretionary functions are protected from personal liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. However, "the boundaries of the supposed 'right' must be sufficiently definite so that the official understood that his actions violated it...." *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). In determining whether a particular right was clearly established, courts consider three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

In this case, we must determine whether Samuels had the clearly established right at the time of his September 1985 disciplinary hearing to call officer Nolan as a witness, despite the fact that Trudo considered Nolan's testimony unnecessary. In *Ponte,* decided in 1985, the year of the events in issue, the Court intimated that a disciplinary board could refuse to call an inmate's witness whom the board considered unnecessary. This was the gist of the Court's outlook when it recommended that a disciplinary board "state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Ponte,* at 496, 105 S.Ct. at 2195 (quoting *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980). The Court further stated that " '[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits....' " *Id.* 471 U.S. at 499, 105 S.Ct. at 2197 (quoting *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980). Moreover, the Court noted its previous "observation in *Wolff* that '[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators....' " *Id.* (quoting *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979).

Based on *Wolff* and *Ponte,* the two most germane decisions at the time of the hearing, this Court reluctantly must conclude that Trudo and Selsky did not violate "a clearly established" right by failing to interview Officer Nolan. Trudo's decision fell within the flexible standard set forth in *Wolff* that balanced an inmate's right to adequate due process against the institutional needs of the prison. *Fox v. Coughlin,* 893 F.2d 475, 478 (2d Cir.1990).

In a case subsequent to *Wolff,* the Second Circuit held that failing to allow an inmate to call a *single* witness during a 1979 disciplinary hearing subjected prison officials to liability under Section 1983. *McCann,* 698 F.2d at 120–25. Here, however, Captain Trudo allowed Samuels to call two of his three witnesses. These facts are more similar to *Fox,* also decided after *Wolff,* where two of an inmate's seven witnesses were excluded from testifying at a 1983 hearing because prison officials deemed their testimony redundant. *Fox,* 893 F.2d at 478. In granting the prison officials qualified immunity, the *Fox* court stated that the case stood in "stark contrast to the hearing in *McCann* where none of the witnesses requested by the inmate were interviewed." *Id.*

 Although the *Fox* court cautioned that "failure to ... interview an inmate's requested witnesses without assigning a valid reason may in the future provide a sufficient basis for a viable § 1983 action," *id.,* this

standard was not clearly defined at the time the present cause of action accrued. Accordingly, because Selsky and Trudo had no forewarning that refusing to interview one of Samuels' witnesses at his 1985 disciplinary hearing could infringe upon his constitutional rights, the doctrine of qualified immunity bars Samuels' Section 1983 claim against them.

### D. Samuels' Motion To Compel

Because we grant defendants' motion for summary judgment, additional discovery in this action is unnecessary. Therefore, Samuels' motion to compel Trudo to answer interrogatories is DENIED.

### III. Conclusion

Consistent with this opinion, defendants' motion for summary judgment is GRANTED, and plaintiff's motion to compel is DENIED.

SO ORDERED.