Larry FINNEY, Plaintiff–Appellant,

v.

Thomas A. COUGHLIN, Individually and in his official capacity as Commissioner of Department of Correctional Service for the State of New York; Leroy Harrison, Individually and in his official capacity as Vocational Supervisor at Great Meadows Correctional Facility; Arthur A. Leonardo, Individually and in his official capacity as Superintendent at Great Meadow Correctional Facility, Defendants–Appellees.

No. 00–0138.

United States Court of Appeals, Second Circuit.

Feb. 2, 2001.

John R. Lewis, Esq., Sleepy Hollow, NY, for appellant.

Martin Hotvet, Assistant Solicitor General I Eliot Spitzer, Attorney General of the State of New York, Albany, NY; Nancy A. Spiegel, Assistant Solicitor General and Peter H. Schiff, of counsel, I, for appellees.

Present GRAAFEILAND, CALABRESI, Circuit Judges, and PATTERSON,* District Judge.

### SUMMARY ORDER

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be and hereby it is AFFIRMED.

## I. BACKGROUND

Larry Finney ("plaintiff") was an inmate in the custody of the State of New York,

---

* The Honorable Robert P. Patterson, Jr., of the United States District Court for the Southern District of New York, sitting by designation.

188

incarcerated at the Great Meadow Correctional Facility (the "Great Meadows Facility"). On November 17, 1991, prison guards, proceeding in plaintiff's absence, conducted a "suspicion cell frisk" of plaintiff's cell, and found a sharpened, threaded rod, or shank. The following day, plaintiff was served with an "Inmate Misbehavior Report," charging him with possessing a weapon in violation of prison rule 113.10. Plaintiff pleaded "not guilty," denied all knowledge of the shank that had been found, and claimed he had been "set up." Because the punishment for this violation might exceed thirty days of confinement to the prison's special housing unit, a "Tier III" disciplinary hearing was held to adjudicate plaintiff's case. *See* N.Y. Comp. Codes R. & Regs tit. 7, ss. 253.7(iii), 270.3(a) (1995). The Tier III hearing was held on November 21, 1991, with defendant Leroy Harrison ("Harrison"), who was the Vocational Supervisor at the Facility, presiding. The alleged procedural irregularities of the Tier III hearing form the basis of this lawsuit.

In presenting his defense, plaintiff requested that a fellow inmate, Michael Newkirk ("Newkirk"), be called to testify on his behalf. Plaintiff was told that Newkirk was unwilling to testify and had signed a "Witness Refusal to Testify" form. Plaintiff objected to this Witness Refusal form and asserted that he believed that Newkirk had been prevented from testifying by threats from corrections officers. (Newkirk would later state in an affidavit that he saw prison "feed-up" workers push a cell-broom into plaintiff's cell, and that a corrections officer had subsequently ordered him to stay away from plaintiff's cell and told him "don't be no witness for that asshole, either!") In response to plaintiff's objection, the hearing officer said that he accepted the statement of the assistant assigned to aid plaintiff in preparing his case to the effect that

Newkirk refused to testify. Furthermore, although a corrections officer testified that the search of plaintiff's cell was triggered by the report of a "confidential informant" who claimed to have heard scraping sounds coming from plaintiff's cell, the officer refused to reveal the identity of this informant.

Plaintiff did succeed in introducing testimony by a corrections officer named Fitzpatrick, who stated that "I cannot determine for a fact a conspiracy to set this inmate up even though my opinion is that there was a conspiracy to do just that, but I cannot name names nor can I point fingers at people without substantial evidence." Plaintiff was found guilty and sentenced to 90 days in the prison's Special Housing Unit and loss of package, commissary, and telephone privileges. Plaintiff was read his appeal rights and stated that he understood them, and the hearing ended without any further objection on his part.

On November 26, 1991, plaintiff filed a timely administrative appeal, and on January 14, 1992, the finding of guilt was summarily affirmed. Plaintiff also wrote letters putting his case to defendants Thomas Coughlin ("Coughlin")—the Commissioner of the New York State Department of Correctional Services—and Arthur Leonardo ("Leonardo")—the Superintendent of the Great Meadows Facility. Both men responded to plaintiff's letters: Coughlin reiterated the lack of evidence to support plaintiff's claim that the shank was planted in his cell; and Leonardo, after investigating plaintiff's claim, stated that he had reached the same conclusion. Plaintiff served the 90 day penalty that had been imposed.

On March 26, 1992, plaintiff filed suit against Leonardo and Coughlin in New York state court, pursuant to N.Y.C.P.L.R.

§§ 7801–06, challenging the disciplinary proceeding. (Harrison was not named a defendant in the state case.) By this time, Newkirk had ceased to be unwilling to testify, and plaintiff's submissions to the state court included the affidavit in which Newkirk described what he had seen and his subsequently being threatened by a corrections officer. On December 31, 1992, Assistant Attorney General for the State of New York Patrick Barnett–Mulligan submitted a letter to the state court on behalf of defendants Coughlin and Leonardo, stating that "the determination [of plaintiff's guilt] is indefensible on the ground that the hearing officer failed to make further inquiry into [plaintiff's] defense," indicating that all record of the incident would be expunged from plaintiff's prison record, and requesting that "[i]nasmuch as the administrative reversal has granted [plaintiff] all the relief he sought in his petition, the proceeding should be dismissed as moot." Although plaintiff opposed the dismissal of his petition on the ground that he was entitled to compensation for his wrongful confinement to the Special Housing Unit, the state court found that if the disciplinary ruling were expunged from plaintiff's record, he would have received all the relief to which he was entitled, since damages are not available in proceedings such as that brought by plaintiff. Accordingly, the state court dismissed plaintiff's petition on May 20, 1993, on the understanding that the disciplinary ruling would be expunged.

On November 1, 1994, plaintiff brought suit in federal court, pursuant to 42 U.S.C. § 1983, alleging that the procedures employed at the Tier III hearing were constitutionally invalid and that the three defendants—Harrison in presiding over the Tier III hearing, and Leonardo and Coughlin in failing to remedy Harrison's errors in spite of being informed of them—violated his constitutional right to due process. Plaintiff seeks compensatory and punitive damages.[2]

Defendants moved for summary judgment on June 15, 1999, and on April 10, 2000, the District Court (Judge Thomas J. McAvoy, adopting the March 14 Report and Recommendation of Magistrate Judge David R. Homer in its entirety) granted defendants summary judgment. Although the District Court found (1) that plaintiff's punishment might have deprived him of a liberty interest protected by the Due Process Clause, see Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) and (2) that defendants Leonardo and Coughlin had the level of involvement in plaintiff's punishment on which section 1983 liability depends, see Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986), the District Court nevertheless concluded that, even resolving all factual ambiguities and disputes in plaintiff's favor, plaintiff's lawsuit must fail because the Tier III hearing adjudicating plaintiff's case did not fall short of the standards of constitutional due process.

Plaintiff now appeals, arguing (1) that because of their admission in state court, defendants are collaterally estopped from claiming that the hearing plaintiff was afforded satisfied the demands of due process, (2) that Harrison's conclusion at the hearing was against the weight of the evidence, (3) that defendants did not enjoy qualified immunity for their refusal to allow plaintiff to confront the confidential informant, and (4) that Harrison's failure to compel Newkirk's testimony did deprive plaintiff of due process. Defendants re-

---

**2.** The action was transferred by stipulation dated May 22, 1995 to the United States District Court for the Northern District of New York, and plaintiff filed an amended complaint on May 13, 1999.

quest that we affirm the District Court's opinion in each of these respects.[3]

## II.  DISCUSSION

■ Plaintiff's first three contentions are straightforwardly meritless, and we reject them for substantially the reasons presented in the magistrate judge's report and recommendation and adopted by the district court.  Plaintiff's fourth argument—that he was deprived of his due process rights when defendant Harrison refused to compel Newkirk to testify at the Tier III hearing—presents a more difficult question.

■ It is settled that an inmate in a prison disciplinary hearing does not enjoy the same absolute right to call and confront witnesses as a defendant in a criminal trial, but that this right is instead qualified by the special circumstances of prison life, so that an inmate may not call witnesses when doing so would impinge on legitimate correctional goals.  *See Wolff v. McDonnell*, 418 U.S. 539, 566–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Walker v. McClellan*, 126 F.3d 127, 130 (2d Cir.1997).  Furthermore, a lack of necessity for a witness's testimony counts as a valid basis for refusing to call a witness, *see Wolff*, 418 U.S. at 566, and "if a witness will not testify if called, it cannot be a 'necessity' to call him."  *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir.1993) (per curiam).

Defendants ask us to apply these precedents to their case to find that defendant Harrison's refusal to call Newkirk to testify at the Tier III hearing did not violate plaintiff's due process rights.  But the court in *Silva* reached its conclusion only after noting that the witnesses whose testimony was not compelled would have incriminated themselves in their testimony and that the hearing officer had no power to confer immunity on them.  *See Silva*, 992 F.2d at 21–22.  And furthermore, the *Silva* court expressly focused on cases in which the "prison official ... reasonably concluded that it would be futile to call a witness to testify."  *Id.*, at 22.  Here, instead, Harrison accepted a "Witness Refusal to Testify" form signed by Newkirk and information from plaintiff's hearing assistant that Newkirk refused to testify.  And although plaintiff stated that he believed that Newkirk had been threatened by corrections officers, Harrison made no inquiry into the basis for plaintiff's belief or inquiry of Newkirk as to whether he had been threatened.

■ It is, however, unnecessary to determine whether Harrison's failure to make such inquiries constituted a violation of plaintiff's rights under *Wolff*, *Walker*, or *Silva*, because Newkirk's affidavit, submitted to the Appellate Division in connection with plaintiff's Article 78 suit, reveals that essentially what Newkirk would have testified to is that he saw prison "feed-up" workers push a cell broom into plaintiff's cell, a practice Newkirk himself described as "not unusual."  Therefore, even if New-

3.  In their briefs, defendants also asked that if we reverse the district court on one of these grounds, we remand the case for reconsideration, in light of *Colon v. Howard*, 215 F.3d 227 (2d Cir.2000), of the question whether plaintiff's 90 day confinement to the Special Housing Unit (which was shorter than the 101 day period mentioned in *Colon*) constituted a deprivation of liberty sufficient to trigger rights under the Due Process Clause.  At oral argument, however, counsel for defendants candidly admitted that, on his own reading of *Colon*, and given the record in this case, plaintiff would most likely be able to present enough evidence that the conditions in the SHU to which he was confined were sufficiently unusual so that his claim could survive summary judgment in spite of *Colon*.  Given our disposition of this appeal, we need not address the issue.  Nevertheless, we wish to commend counsel for the defendants for his forthrightness in this regard.

kirk had been called to testify, whatever testimony he could have presented would not have been significantly exculpatory. And there can be no question that a prison hearing officer may exercise his "discretion to keep the hearing within reasonable limits," *Wolff,* 418 U.S. at 566, by declining to call immaterial witnesses.[4] *Cf. Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994) (a prison disciplinary hearing officer may refuse to allow even willing witnesses to testify where their testimony would be unduly cumulative). Accordingly, plaintiff's due process rights were not violated by Harrison's failure to disregard Newkirk's refusal to testify.

## III. CONCLUSION

Having considered all of plaintiff's claims and concluded that they are without merit, we AFFIRM the decision of the district court granting summary judgment for defendants.

---

4. We note, furthermore, that although prison officials are required to explain the reason for denying an inmate's request that a witness be called to testify, they need not present this explanation on the spot but may instead "present[ ] testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect." *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).