**Lawrence DAWKINS, Plaintiff,**

v.

**Paul GONYEA et al., Defendants.**

**No. 08 Civ. 2194 (VM).**

United States District Court,
S.D. New York.

Aug. 18, 2009.

Lawrence Dawkins, Sonyea, NY, pro se.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se plaintiff Lawrence Dawkins ("Dawkins") brought this action pursuant to 42 U.S.C § 1983 ("§ 1983") against defendants Deputy Superintendent of Security Paul Gonyea ("Gonyea"), Lieutenant Steven Katz ("Katz"), and Superintendent Raymond Cunningham ("Cunningham") (collectively, "Defendants"),[1] all of whom at the relevant times in this action were officials of the New York State Woodbourne Correctional Facility ("Woodbourne"). Dawkins alleges violations of his rights under the Eighth and Fourteenth Amendments of the United States Constitution. Dawkins seeks compensatory relief and an order of declaration for these alleged violations.[2] Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Defendants' motion to dismiss is GRANTED, and Dawkins is granted leave to replead.

### I. BACKGROUND [3]

■ On December 7, 2006, Katz issued the Report, a misbehavior report identify-

---

**1.** After filing his complaint, Dawkins dismissed Cunningham from this action. (*See* Reply to Defendants' Motion to Dismiss, dated December 11, 2008 ("Reply"), ¶ 23.)

**2.** The Court need not discuss Dawkins's request for an order declaring that Defendants acted in violation of the United States Constitution. A finding regarding Dawkins's § 1983 claim will include any violations by prison officials of Dawkins's constitutional rights. *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994) (finding that to succeed on a § 1983 claim, a plaintiff must show a deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" (citation omitted)).

**3.** The facts below are taken from Dawkins's complaint in this action, dated January 14, 2008 ("Complaint"). The Complaint references the Hearing Record Sheet, dated December 15, 2006 ("Record Sheet"), attached as Exhibit B to the the First Amended Declaration of Christopher L. Van de Water in Support of Defendants' Motion to Dismiss, dated October 3, 2008 ("Amended Declaration"); and the Inmate Misbehavior Report ("Report"), issued on December 7, 2006, attached as Exhibit C to the Amended Declaration. In deciding a motion to dismiss, the Court may consider any documents that are attached to, referenced in, or integral to the preparation of the pleadings. *See Miller v. Lazard, Ltd.,* 473 F.Supp.2d 571, 578 (S.D.N.Y.2007) (*citing Chambers v. Time War-*

ing Dawkins, a prisoner at Woodbourne,[4] as "one of two" inmates responsible for "distributing a large amount of heroin throughout the facility." (Report.) The Report indicated that information had been obtained from a confidential informant who identified Dawkins by name and from an array of photos. As a result of the Report, Dawkins was placed in the Special Housing Unit ("SHU") the very day the Report was issued. Dawkins received the Report on the following day, December 8, 2006.

Based on the Report, a disciplinary hearing was held on December 13 and 14, 2006, presided over by Gonyea. During the hearing, Dawkins requested, from both Katz and Gonyea, the identity of the second person listed in the Report as also being responsible for the heroin distribution. Dawkins's requests were denied.

On December 10, 2006, Dawkins received a letter from another inmate, Alonzo Cheeks ("Cheeks"), which stated that Cheeks believed Dawkins to be innocent of the alleged violations and that Dawkins was being charged with these violations based only on his association with Cheeks. In his letter, Cheeks stated that he wished to come forward to testify on Dawkins's behalf, writing to Dawkins: "I'm willing to be a witness and testify in [sic] your behalf. . . ." Cheeks wrote, "whoever it was that implicated you did so under the pretense that because we are cool the way we are that you knew what was going on when you didn't." (Reply, Ex. B (Letter from Cheeks to Dawkins, dated Dec. 10, 2006)).

Gonyea read Cheeks's letter into the record on December 13, 2006. However, it was not until the second day of the hearing that Cheeks was identified as the other inmate listed with Dawkins in the Report. That same day, Dawkins was informed that Cheeks had refused to testify.

At the hearing, a confidential witness testified outside of Dawkins's presence. Gonyea reviewed a confidential tape and confidential testimony from Katz outside of Dawkins's presence as well. Katz and an inmate at Woodbourne, named "Ayala," did testify in Dawkins's presence during the hearing.

At the close of the hearing, Gonyea found Dawkins guilty, stating that the evidence relied upon was the "written report and verbal testimony of Lt. Katz that he received confidential information from [a] reliable source" and "confidential testimony of a source that substantiated the written report of Lt. Katz." (Record Sheet.) Gonyea sentenced Dawkins to a year of confinement in SHU. Dawkins remained in SHU for a total of 280 of days from December 7, 2006 to September 12, 2007, released before the one-year sentence imposed due to his good behavior.

After the hearing, Dawkins filed an administrative appeal of Gonyea's decision. On February 28, 2007, Dawkins received a decision from Donald Selsky ("Selsky"), the Director of Special Housing/Inmate Disciplinary Programs for the New York State Department of Correctional Services, affirming Gonyea's decision.

■ Dawkins then filed this action,[5] al-

---

ner, 282 F.3d 147, 152–53 (2d Cir.2002)), The Court accepts all well-pleaded facts in the Complaint as true for the purpose of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 180 (2d Cir.2008). Unless specifically referenced, no further citation to these sources will be made.

4. The Court notes that Dawkins is currently housed in the Livingston Correctional Facility.

5. Dawkins appears to have exhausted the administrative remedies available to him as required by Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Dawkins appealed the determination made at the Tier III hearing on the alleged violations, and received a ruling

leging that the Report provided inadequate notice and that the conduct of the disciplinary hearing violated his due process rights. He further alleged that his confinement in SHU violated his rights under the Eighth Amendment.[6]

In response to Dawkin's remaining claims, Defendants move to dismiss the Complaint on the grounds that: (1) Defendants are entitled to immunity under the Eleventh Amendment; (2) Dawkins's claims of inadequate notice of charges and time to prepare his defense fail as a matter of law; (3) Dawkins has failed to allege personal involvement for defendants Cunningham and Katz; and (4) Defendants are entitled to qualified immunity.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In ruling on a motion to dismiss, courts should "assess the legal feasi-

bility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Secs. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted). A court must accept all well-pleaded factual allegations in a complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers,* 282 F.3d at 152.

■ In the case of a pro se litigant, the court reads the pleadings leniently and construes them to raise "the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citation and internal quotation marks omitted). This guidance applies with particular force when the plaintiff's civil rights are at issue. *See McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir. 1999). However, even pro se plaintiffs asserting civil rights claims are not exempt from *Twombly*'s threshold that the pleadings must contain factual allegations sufficient to raise a "right to relief above the speculative level." 550 U.S. at 555, 127 S.Ct. 1955.

■ To state a claim under § 1983, Dawkins must allege that Defendants, while acting under color of state law, deprived him of federal constitutional or statutory rights. *See Pabon v. Wright,* 459 F.3d 241, 249 (2d Cir.2006). Dawkins claims that Defendants violated his Fourteenth Amendment rights.

from Selsky. *See* 7 N.Y.C.R.R. § 254.8. Furthermore, Defendants failed to raise any objection to Dawkins's claims based on failure to exhaust in their motion to dismiss, and have thus waived any such defenses. (*See Giano v. Goord,* 380 F.3d 670, 675 (2d Cir. 2004) (stating that it has been established that "administrative exhaustion is not a jurisdic-

tional predicate" and that "failure to exhaust is an affirmative defense") (citations omitted)).

**6.** Dawkins stated in the Reply, that he was abandoning his Eighth Amendment claim. Therefore, the Court will not discuss that claim herein.

## B. *APPLICATION*

Dawkins contends that his due process rights were violated because: (1) the notice he received was inadequate to apprise him of the charges against him; (2) the hearing officer relied on statements of the informant without making an independent assessment of the informant's credibility; and (3) the hearing officer did not allow him to present certain evidence.

### 1. *Eleventh Amendment*

■■■ The Eleventh Amendment bars a suit by a citizen of a state against that state or one of its agencies, absent the state's consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). It is well established that Congress did not intend to abrogate the states' immunity by enacting § 1983. *See Quern v. Jordan,* 440 U.S. 332, 343–44, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). However, while "the Eleventh Amendment bars recovery against an employee who is sued in his official capacity, [it] does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity." *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) (*citing Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

■■ To the extent that Dawkins is suing Defendants in their official capacities to recover monetary damages, his claims are barred by the Eleventh Amendment. *See Graham,* 473 U.S. at 169, 105 S.Ct. 3099 (holding that a claim for damages against state officials in their official capacity is a claim against the state and is therefore barred by the Eleventh Amendment); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (holding that a prisoner's § 1983 claims for damages against individual prison officials in their official capacities are barred by the Eleventh Amendment); *see also Bussey v. Phillips,* 419 F.Supp.2d 569, 588 (S.D.N.Y.2006).

■■ While Dawkins initially asserted claims against Defendants in their official capacities, in his Reply he claims that he is asserting his claims against Defendants in their individual capacities. Because of Dawkins's pro se status, the Court will read his claims to be asserted against Defendants in their individual capacities.

■■ However, even if defendants are named in their individual capacities, the state may be the real party in interest, and thus the suit may still be barred by the Eleventh Amendment. Therefore, for a § 1983 claim to survive an Eleventh Amendment challenge, "a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation." *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998). To demonstrate that the Defendants, and not the state, are the real parties in interest, Defendants' personal involvement in the alleged constitutional violation is a prerequisite to the imposition of damages under § 1983. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

■■ To survive a motion to dismiss, a § 1983 complaint against a supervisor need only allege that the supervisor was personally involved in the constitutional deprivation; it need not plead detailed facts about the involvement. *See Locicero v. O'Connell,* 419 F.Supp.2d 521, 525–26 (S.D.N.Y.2006) (*citing Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002)). The personal involvement of a supervisory defendant can be satisfied by the plaintiff alleging facts that show: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after

being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *See 5 Borough Pawn, LLC v. City of New York,* 640 F.Supp.2d 268, 296–97 (S.D.N.Y.2009) (*citing Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (applying the standard used in *Colon* to a motion to dismiss)).

### a. *Claim Against Katz*

■ Dawkins alleges that Katz violated his due process rights by filing the Report which provided inadequate notice of the charges against Dawkins, resulting in Dawkins's placement in SHU the same day the Report was filed. Dawkins has pled sufficient facts suggesting that Katz, who signed and created the Report, directly participated in the alleged constitutional violation by not providing Dawkins with adequate notice to prepare a defense. Therefore, Dawkins's claim against Katz for providing Dawkins with inadequate notice of the charges against him is not barred by the Eleventh Amendment.

### b. *Claim Against Cunningham*

Because Dawkins has consented to dismiss Cunningham from this action, (Reply ¶ 23), the Court dismisses Dawkins's claim against Cunningham.

### c. *Claim Against Gonyea*

■ Dawkins's claim against Gonyea is based on Gonyea's role as the hearing officer at the disciplinary hearing. Dawkins alleges that Gonyea "participated directly in the alleged constitutional vio-

lation" when he failed to conduct an adequate assessment of the confidential informant's credibility and when he failed to adequately justify his denial of Dawkins's request to hear testimony from Katz, the confidential witness, and any evidence gathered from the confidential tape. *See Colon,* 58 F.3d at 873. Therefore, Gonyea's involvement in the disciplinary hearing is sufficient to allege personal involvement.

### 2. *Due Process*

■ Dawkins's due process claim alleges three procedural deprivations: (1) inadequate notice; (2) failure to conduct a proper assessment of the confidential informant's credibility; and (3) unwarranted denial of requests to call witnesses and present a defense. To proceed on a due process claim with respect to a prisoner's disciplinary proceeding, a plaintiff must establish (1) possession of a liberty interest and (2) deprivation by defendants of that interest as a result of insufficient process. *See Odom v. Calero,* No. 06 Civ. 15527, 2008 WL 2735868, at *4 (S.D.N.Y. July 10, 2008) (*quoting Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001) (citations omitted)).

### a. *Liberty Interest*

■ "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (*quoting Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). To determine whether an inmate has suffered "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective con-

finement. *See Welch v. Bartlett,* 196 F.3d 389, 393 (2d Cir.1999). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker,* 139 F.3d 329, 336 (2d Cir.1998). Dawkins's Complaint notes only the duration of his time in SHU and is completely devoid of any allegation describing any conditions that may render his confinement there an atypical and significant hardship.

■ Generally, periods of confinement in SHU lasting fewer than 101 days have been found not to amount to atypical and significant hardship. *See, e.g., Sealey v. Giltner,* 197 F.3d 578, 588–90 (2d Cir.1999) (stating that conditions in "SHU are doubtless unpleasant and somewhat more severe than those of general [prison] population, but the degree of incremental harshness, endured for 101 days, is not an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Ortiz,* 380 F.3d at 655 (finding that conditions such as "solitary confinement for twenty-three hours a day, provid[ing] one hour of exercise in the prison yard per day, and permitt[ing] two showers per week" for fewer than 101 days does not amount to atypical and significant hardship). By contrast, periods in SHU of 305 days or more have been found to be atypical and significant without any further aggravating conditions. *See Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000) (holding that confinement of 305 days in SHU was "a sufficient departure from the ordinary incidents of prison life to require procedural due process"). Still, 305 days is not an established threshold to show an atypical and significant hardship. It is important that "[b]oth the conditions and

their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey,* 197 F.3d at 586 (internal citation omitted).

■ No firmly established, bright-line rule exists to determine at what point a prisoner's confinement in SHU rises to the level of "atypical and significant hardship." *Wilkinson v. Austin,* 545 U.S. 209, 223, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (citations omitted); *see also Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (*citing Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000)); *Howard,* 215 F.3d at 234 (stating that the Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights"). In addressing this issue, the Second Circuit has remanded cases to the district courts instructing them to establish a detailed record regarding the harshness of the confinement. *See, e.g., Howard,* 215 F.3d at 232 (instructing the district court to develop detailed factual records "in cases challenging SHU confinements of durations within the lange bracketed by 101 to 305 days"); *Sims,* 230 F.3d at 23 (noting that confinement of 125 to 288 days is "relatively long, and thus necessitating specific articulation of factual findings" (citations and internal quotation marks omitted)).

■ Dawkins's 280–day confinement[7] in SHU falls at the high end of the range that requires an additional determination of the particular conditions of confinement before a court can find that the prisoner possessed a liberty interest. To allege a cognizable due process claim, Dawkins must allege that the conditions of

---

7. When determining whether the prisoner had a liberty interest at stake, courts are to consider the "penalty ... *actually imposed,"*

and not the maximum potential punishment. *Scott v. Albury,* 156 F.3d 283, 285 (2d Cir. 1998).

his confinement in SHU were significantly different from the conditions of the general prison population at Woodbourne, as well as the population in administrative segregation and protective custody. *See Sandin,* 515 U.S. at 485–86, 115 S.Ct. 2293. The proper comparison "is not between the duration of plaintiff's SHU sentence and the SHU terms received by the others who were convicted of misbehavior." *Welch,* 196 F.3d at 393 (2d Cir. 1999). Such a comparison would not determine whether Dawkins's time in SHU amounted to "deprivation [that] was more serious than typically endured by prisoners as an ordinary incident to prison life." *Id.* Because Dawkins failed to make any allegations detailing the conditions of his confinement in SHU, and because the duration of his confinement was shorter than confinements that courts in this Circuit have deemed sufficient to impose per se atypical or significant hardship, the Court finds that Dawkins has not pled a cognizable liberty interest. Accordingly, the Court must dismiss Dawkins's due process claim.

 However, the Court grants Dawkins leave to replead so that he may provide factual allegations describing the conditions of his confinement in SHU that he claims would support a finding of atypical and significant hardship. Factors the Court may use to assess the severity of Dawkins's time in SHU include any evidence of the "psychological effects of prolonged confinement in isolation and the precise frequency of SHU confinements of varying durations." *Howard,* 215 F.3d at 231. Dawkins should state in his amended complaint the conditions of his confinement as compared with the confinement of others in the general population at Woodbourne. These conditions may include the percentage of the day that prisoners spend within the cell, hygiene conditions, access to programs, as well as other conditions that may be applicable to Dawkins's situa-

tion. *See Welch,* 196 F.3d at 393 (noting that "far inferior" hygiene conditions in SHU that included "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes" may permit the finding of atypical and significant deprivation); *see also Ortiz,* 380 F.3d at 653 ("The showering and other personal issues, in connection with other circumstances, may constitute an abusive situation.").

#### b. *Insufficient Process*

 For Dawkins's due process claim to survive Defendants' motion to dismiss, he must allege that he was deprived of a liberty interest as a result of insufficient process. *See Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998). A prisoner may not properly be deprived of a cognizable liberty interest without due process of law. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). As the Court stated above, it is not clear, based on Dawkins's Complaint, that he had a liberty interest at stake at the hearing. However, the Court concludes that granting Dawkins leave to replead to describe the conditions of his confinement, and therefore allege a cognizable liberty interest, is not a futile exercise, as Dawkins has sufficiently alleged the other elements of a due process claim.

#### i. *Adequate Notice*

 Due process requires that, in a prison disciplinary hearing resulting in the imposition of solitary confinement, an inmate must be afforded advance written notice of the charges against him and a written statement of facts supporting the disposition and reasons for the disciplinary action taken. *See Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999) (*citing Wolff,* 418 U.S. at 563–64, 94 S.Ct. 2963). Notice should provide enough information

such that it is possible for the inmate to prepare a defense to the charges against him. *See Taylor v. Rodriguez*, 238 F.3d 188, 192–93 (2d Cir.2001) (*citing McKinnon v. Patterson*, 568 F.2d 930, 940 n. 11 (2d Cir.1977)). Where possible, notice should include information about the date, place, and manner of the alleged misconduct. *See Wolff*, 418 U.S. at 564, 94 S.Ct. 2963. When these details are not available, the notice should explain that the information is unknown. *See id.* The need for adequate notice is especially strong when a large part of the disciplinary hearing takes place outside of the inmate's presence. *See Sira v. Morton*, 380 F.3d 57, 70 (2d Cir.2004) (*citing* Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L.Rev. 1267, 1281 (1975)). In this case, Dawkins had a heightened need for adequate notice because the majority of the evidence presented against him was not made available to him.

▮ Dawkins acknowledges receiving written notice of the charges against him on December 8, 2006, five days before the disciplinary hearing commenced and sufficiently in excess of the 24–hour minimum period required by *Wolff*. *See Wolff*, 418 U.S. at 564, 94 S.Ct. 2963. He alleges, however, that the notice was so vague that it was impossible for him to prepare an adequate defense. Specifically, he asserts that the Report: (1) failed to provide the time, date, and place of the alleged incident of misbehavior; (2) failed to identify the other person who allegedly participated in the incident with him; and (3) failed to adequately describe the alleged incident.

According to New York State regulation, "[t]he misbehavior report shall include ... *the date, time and place of the incident.*" 7 N.Y.C.R.R. § 251–3.1(c)(3) ("§ 251–3.1(c)(3)") (emphasis added.) Defendants argue that "*the date, time and place where the confidential information was disclosed*

was set forth in the misbehavior report, as well as the fact that an investigation was launched based on the informant's information that a large heroin ring was operating within the facility." (Memorandum of Law in Support of Defendants' Motion to Dismiss, dated October 3, 2008 at 8 (emphasis added)). They further argue that "[t]he misbehavior report is clear on its face providing 12/7/06 as the incident date, 9:45 a.m. as the incident time, references violations of Rule 113.25 (shall not sell any narcotic or controlled substance or conspire to introduce such items into the facility) and Rule 114.10 (smuggling)." (*Id.* at 12.) However, it is clear from the Report that the incident date and time recorded are the date and time the confidential informant conveyed information to officers, not the date and time Dawkins actually participated in the alleged violations.

Although Defendants argue that they have provided the information required under § 251–3.1(c)(3), it is the date, time and place of the *incident* that is required, not the date, time and place of the *disclosure* of confidential information. Defendants cite to *Hameed v. Mann*, 849 F.Supp. 169 (N.D.N.Y.1994), arguing that the court there held that sufficient notice had been given based upon a similarly composed report. Although the misbehavior report in *Hameed* similarly "contained no particularized reference" to the alleged incident, it specified "the dates of the alleged activities," which in this case were not provided to Dawkins. *Hameed*, 849 F.Supp. at 172–73. While the infraction Dawkins was accused of may have taken place over a long period of time, and the date and time of each action he took in furtherance of the scheme would not be required, the information that was provided—the date and time the violation was reported to Katz— was not relevant to Dawkins's actions at all. Thus, the date and time information

on the Report did not aid Dawkins in preparing a defense to the charges.

Additionally, the Report indicated that the place of the incident was Woodbourne, identifying no sites within the facility where Dawkins allegedly engaged in the charged conduct. By identifying the incident location as the entire Woodbourne facility, the Report essentially provided Dawkins with "no notice of where within his then-limited universe his misconduct was alleged to have occurred." *Sira*, 380 F.3d at 71. Given that Dawkins was incarcerated at Woodbourne at the time of the alleged misconduct, listing Woodbourne without any further particulars as the incident location added no useful information to the Report. It is conceivable, given the violation alleged, that the Report intended to indicate that the drugs Dawkins smuggled were distributed throughout the facility. However, it is not clear from the Report that Dawkins is accused of personally delivering these drugs throughout the facility, or whether his role was limited to certain areas, such as where the drugs are alleged to have entered the facility or where Dawkins is alleged to have delivered the drugs to other inmates. Therefore, the location listed did not aid Dawkins in preparing a defense.

Further, the Report failed to specify "the particulars of the alleged incident of misbehavior involved." 7 N.Y.C.R.R. § 251–3.1(c)(1). Dawkins stated that the Report "failed to give a general idea of how the herion [sic] was being distributed." (Complaint ¶ 3.) While this information is not required for due process, adding these particulars may have provided Dawkins with enough information that the Report could be deemed to provide him with adequate notice.

Moreover, while the Report did indicate that more than one inmate was involved, it failed to identify this other individual and the specific roles played by Dawkins and the unnamed inmate, as required by the New York Regulations. *See* 7 N.Y.C.R.R. § 251–3.1(c)(4) (requiring that "when more than one inmate was involved in an incident, the report should, to the extent practicable under the given circumstances, indicate the specific role played by each inmate"). Further, it was not until the second day of his hearing that Dawkins was informed that Cheeks was the second inmate charged with the violation. This notification was not in compliance with the 24–hour advance notice required under *Wolff*. *See Wolff*, 418 U.S. at 564, 94 S.Ct. 2963. Because the source of the information was a confidential informant, Defendants may be able to establish facts to support a claim that disclosing the identity of the other inmate being charged with the crime was "not practicable under the given circumstances." 7 N.Y.C.R.R. § 251–3.1(c). However, it seems unlikely that Defendants would be able to show that disclosure of the roles the two inmates played in the violation or the manner in which the violation was effectuated would pose such a threat.

■ Although violations of state law procedural requirements do not by themselves constitute a deprivation of due process, *see Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990), under the standard established by *Wolff*, the notice supplied to Dawkins in the Report was insufficient. *Wolff* requires that notice provide enough information such that a reasonable person may identify relevant evidence and present a defense. *See* 418 U.S. at 564, 94 S.Ct. 2963. A report lacking one of the categories of information about the violation, as described above—the date and time, the places the inmate is alleged to have participated, the manner in which it was perpetrated, the identity of any other persons involved, and the roles the participants played—may still provide adequate notice

to an accused. However, the Report here lacked all of these details and therefore did not afford Dawkins the information he needed to defend himself against the allegations. Thus, Dawkins has sufficiently alleged that he did not receive the notice required by due process.

### ii. *"Some Evidence"*

■ Due process in the prison setting requires "some evidence" to support a finding of guilt. *See Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (holding that where a prisoner claims he was denied due process in a prison disciplinary hearing because he was found guilty based on insufficient evidence, the claim must be rejected if there was "some evidence" to support the decision). The Court in *Hill* stated,

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455–56, 105 S.Ct. 2768.

■ The "some evidence" standard is satisfied only by "reliable" evidence. *See Luna v. Pico,* 356 F.3d 481, 488 (2d Cir. 2004). The Second Circuit has ruled that the "some evidence" standard may be met even if the sole evidence was supplied by a confidential informant, "as long as there has been some examination of indicia relevant to [the confidential informant's] credibility." *Giakoumelos v. Coughlin,* 88 F.3d 56, 61 (2d Cir.1996) (internal quotation marks omitted).

■ In the case at hand, all of the evidence supporting the charge against Dawkins derived from confidential sources. Although Dawkins submitted questions to be asked of the confidential witnesses, there is no indication that these questions were in fact posed to the witnesses. The only testimony presented in front of Dawkins was the testimony of Katz and inmate Ayala. "When sound discretion forecloses confrontation and cross-examination, the need for the hearing officer to conduct an independent assessment of informant credibility to ensure fairness to the accused inmate is heightened." *Sira,* 380 F.3d at 78. An independent assessment of the informant's credibility "would not entail more than some examination of indicia relevant to credibility rather than wholesale reliance upon a third party's evaluation of that credibility." *Russell v. Scully,* 15 F.3d 219, 223 (2d Cir.1993).

■ Gonyea, as hearing officer, relied on (1) the Report filed by Katz; (2) Katz's verbal testimony during the disciplinary hearing that he had received confidential information from a "reliable" source; and (3) confidential testimony of a source, whom Gonyea found to be reliable based on several unspecified factors that substantiated the written Report of Katz. (Report.) It is unclear whether the source that supplied the confidential testimony to substantiate Katz's testimony was the same source that Katz's testimony was based upon.

■ A proper assessment of an informant's credibility would involve an inquiry into the informant's record of reliability. *See Russell,* 15 F.3d at 223 (finding that questioning prison officials on the believability of confidential informants would reveal only the official's opinion, while questioning the informants' record of reliability would elicit "indicia of the informants' credibility"). The record here does not provide adequate indication of a proper assessment of the reliability of any confidential informants.

Additionally, if any confidential informant's testimony was based solely on hearsay, a greater inquiry into the reliability of this hearsay information is required. *See Sira,* 380 F.3d at 78 ("Credible informants may, after all, unwittingly pass along suspect information from unreliable sources."). Although the Report indicates that the confidential informant stated that Dawkins distributed heroin throughout the facility, there is no indication that any confidential informant had first-hand knowledge of the offenses. There is nothing in the Defendants' papers indicating that the confidential informant testified that he actually saw Dawkins sell heroin or make any attempts to distribute the drug. Therefore, a proper inquiry into reliability of any information that is hearsay requires the hearing officer to "consider the totality of the circumstances to determine if the hearsay information is, in fact, reliable." *Id.* Factors Gonyea should have evaluated include the "identity and reputation of the original declarant, his motive for making the statements at issue, whether he is willing to testify and, if not the reasons informing that decision, and the consequences he faces if his disclosures are proven false." *Id.* at 78–79 (*citing Alabama v. White,* 496 U.S. 325, 330–31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)) (additional citations omitted).

Because, at this stage, it appears that Gonyea relied solely on a third party's evaluation of the informant's credibility, Dawkins has sufficiently alleged a due process violation under the "some evidence" standard, assuming he can later establish that he had a liberty interest at stake.

### iii. *Disclosure and Presentation of Evidence*

Dawkins alleges that Defendants also failed to disclose to Dawkins the majority of the evidence supporting the guilty ruling, including the identity of the confidential informant or the substance of the information provided by Katz's confidential testimony, the confidential testimony of the confidential informant, and the evidence presented on the confidential tape. Additionally, Dawkins was not afforded an opportunity to question the confidential informant. These circumstances, if established, would intensify the potential prejudice to Dawkins stemming from the inadequate notice he received.

The Supreme Court has found that an inmate facing disciplinary proceedings is entitled to know the evidence upon which a disciplinary ruling is based. *See Wolff,* 418 U.S. at 564–65, 94 S.Ct. 2963. Further, inmates should be allowed to call witnesses and present documentary evidence. *See id.* at 566, 94 S.Ct. 2963. However, "the right to know evidence supporting prison disciplinary rulings is not absolute," *Sira,* 380 F.3d at 74 (*citing Wolff,* 418 U.S. at 564–65, 94 S.Ct. 2963), and the right to call witnesses and present evidence is subject to institutional safety or correctional goals. *See Wolff,* 418 U.S. at 566, 94 S.Ct. 2963. Therefore, prison officials have a great deal of discretion when conducting disciplinary hearings.

First, because of the risk that disclosure of a confidential informant's identity might pose to the safety of the informant and the prison as a whole, hearing officers retain discretion to deny an inmate's request to call witnesses. *See id.* (noting that prison officials should be granted discretion in determining whether or not to call witnesses, both confidential and non-confidential, in a disciplinary hearing). Second, hearing officers are not required to call witnesses whose testimony is not necessary, *see id.* at 566, 94 S.Ct. 2963, "and if a witness will not testify if called, it cannot be a 'necessity' to call him." *Finney v. Coughlin,* 2 Fed.Appx. 186, 190 (2d Cir.2001) (*quoting Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993)).

Still, the discretion of prison officials in this regard is not unbridled. *See Ponte v. Real*, 471 U.S. 491, 498, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). "Thus, prison officials who decide to circumscribe inmates' procedural rights at disciplinary proceedings must offer a reasonable justification for their actions, if not contemporaneously, then when challenged in a court action." *Sira*, 380 F.3d at 75 (*citing Ponte*, 471 U.S. at 498–99, 105 S.Ct. 2192).

■■■ Dawkins contends that while Cheeks volunteered to testify prior to Dawkins's hearing, once it was revealed that Cheeks was the other inmate being charged he refused to come forward to testify. Dawkins states that Cheeks's alleged refusal to testify prejudiced him. However, Gonyea was not required to call a witness who would refuse to testify. *See Silva*, 992 F.2d at 22 (holding "that if a prison official, presiding over a prison disciplinary hearing, reasonably concludes that it would be futile to call a witness to testify, his refusal to do so will not constitute a violation of the prisoner's constitutional rights"). Dawkins's due process claim with respect to Cheeks's alleged refusal to testify rests solely upon speculation that prison officials coerced Cheeks into refusing to testify. The allegation that Cheeks at one time wanted to testify and then later refused to do so does not raise Dawkins's claim above the level of speculation. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (stating that a complaint must "raise a right to relief above the speculative level").

■■■ Although Dawkins was not entitled to have Cheeks testify in court, he was entitled to have either information concerning the evidence upon which his disciplinary ruling was based or a reasonable explanation from Gonyea describing why he decided to deny the information. *See Sira*, 380 F.3d at 75 (*citing Ponte*, 471 U.S. at 498–99, 105 S.Ct. 2192). Dawkins's

claims against Gonyea based on non-disclosure of evidence are sufficient to survive a motion to dismiss. The sole reason Gonyea offered on the Witness Interview Notice to justify the non-disclosure of confidential written and recorded evidence and testimony, and his refusal to allow witnesses to testify in Dawkins's presence, was that such disclosure would "jeopardize the safety of other inmates and safe secure running at the Facility." (Record Sheet.) There is no further explanation of how the safety of others would have been implicated by the disclosure of the information Dawkins requested.

Even if it had been clear that presenting witnesses in front of Dawkins posed a danger to the witnesses' safety or the safety of Woodbourne as a whole, Dawkins still may have been entitled to be informed of the substance of the witnesses' testimony as well as the substance of the confidential tape. There is nothing in the record to suggest that informing Dawkins of the substance of the information obtained from the witnesses would have posed a safety risk. *See Sira*, 380 F.3d at 75 (requiring further development of the record where there was no indication that disclosing to the plaintiff the substance of confidential disclosures presented any safety risks or revealed the identities of the confidential informants during plaintiff's prison disciplinary hearing). The Court finds that, assuming Dawkins alleges facts sufficient for the Court to find a liberty interest was at stake, Dawkins has alleged a viable due process claim based on the non-disclosure of evidence and Gonyea's failure to adequately support his determinations concerning the confidential evidence.

### iv. *Qualified Immunity*

■■■ Government officials performing discretionary functions generally enjoy qualified immunity from civil damages "in-

sofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Cleavinger v. Saxner,* 474 U.S. 193, 206, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (holding that members of a federal discipline committee established to hear and determine cases concerning inmates who have been charged with infractions of prison rules are entitled to qualified, rather than absolute, immunity for constitutional violations in the conduct of the hearings). Qualified immunity is available "when the undisputed facts establish that it was objectively reasonable for the defendants to believe that their actions did not violate clearly established rights." *Defore v. Premore,* 86 F.3d 48, 50 (2d Cir.1996).

■■■ "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.' " *Johnson v. Goord,* 487 F.Supp.2d 377, 398 (S.D.N.Y. 2007) (*quoting Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003) (alteration in original)). Furthermore, prison officials, including hearing officers, are "charged with knowledge of relevant decisional law, especially the decisions of the circuit in which they perform their official duties." *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989).

■■■ The Court notes that the Supreme Court has urged courts to decide the issue of qualified immunity at the earliest possible opportunity. *See Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled on other grounds, Pearson v. Callahan,* —— U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Qualified immunity shields a government official not only from "liability, but from having to endure the rigors of litigation." *5 Borough Pawn,* 640 F.Supp.2d at 285 (*citing Pearson,* 129 S.Ct. at 815 (citing cases); *Iqbal,* 129 S.Ct. at 1945–46). When assessing qualified immunity at the motion to dismiss stage, before the benefits of discovery, the Court must take the plaintiff's well-pleaded facts as true. *See Stephenson v. Doe,* 332 F.3d 68 (2d Cir.2003). "The question to be answered is whether the defendant officer, confronted with the facts as alleged by the plaintiff, could reasonably have believed that his actions did not violate some settled constitutional right." *5 Borough Pawn, LLC,* 640 F.Supp.2d at 285 (*citing Stephenson,* 332 F.3d at 68).

■■■ Both the Supreme Court and the Second Circuit have clearly recognized an inmate's due process right to receive advance written notice of the disciplinary charges against him so that he might "marshal the facts in his defense." *See Sira,* 380 F.3d at 73 (*quoting Wolff,* 418 U.S. at 564, 94 S.Ct. 2963). The Supreme Court in *Wolff* established this right of prisoners over thirty years ago and it is clear that the Second Circuit has since followed the *Wolff* standard. *See, e.g., Kalwasinski v. Morse,* 201 F.3d at 108 (concluding that a prisoner may not be deprived of a liberty interests without being afforded the proper procedures set out in *Wolff*); *Sira,* 380 F.3d at 70 (stating that for proper notice "there must be sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense") (*citing Wolff,* 418 U.S. at 564, 94 S.Ct. 2963). Katz and Gonyea are charged with this knowledge. *See Francis,* 891 F.2d at 46 (denying qualified immunity to a defendant because as a prison official, he must be "charged with the knowledge of relevant

decisional law," and thus, should have been aware of the Second Circuit's case law that had clearly established the right advanced by the plaintiff). Therefore, if Dawkins is able to plead facts sufficient to show that he possessed a liberty interest, Katz and Gonyea would not be shielded by qualified immunity for violating Dawkins's due process rights by supplying him with inadequate notice regarding the disciplinary proceedings at issue.

■ *Sira* clearly established that an independent assessment is necessary to satisfy the "some evidence" standard when a disciplinary decision is based solely on confidential information. *Sira,* 380 F.3d at 77 (holding that the conclusion in *Taylor,* 238 F.3d at 194, endorsing "an independent credibility assessment when confidential information is used to establish the 'some evidence' necessary to afford due process in prison disciplinary proceedings," bound the court, despite previous ambiguity in the case law of the Second Circuit).

Dawkins's disciplinary hearing occurred in December 2006, well over a year after *Sira* was decided. Therefore, Defendants are charged with the knowledge that an independent assessment of the confidential informant was necessary to satisfy Dawkins's due process rights. However, further information may reveal that Gonyea made a reasonable independent assessment. If this case proceeds following the filing of an amended complaint, the Court will assess whether the method Gonyea chose to assess the reliability of the confidential information was "objectively reasonable" in light of the law at the time of the disciplinary hearing. *See Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir. 2007) (stating that "the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful") (citations omitted in origi-

nal). Objective reasonableness will be determined by assessing whether "officers of reasonable competence could disagree on [the legality of defendants actions]." *Baumann v. Buttarazzi,* No. 05 Civ. 0690, 2008 WL 4000412, at *4 (N.D.N.Y. Aug. 22, 2008) (*quoting Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (alteration in original)).

■ Finally, "[a]n inmate's due process right to know the evidence upon which a discipline ruling is based is well established." *Sira,* 380 F.3d at 74 (*citing Wolff,* 418 U.S. at 564–65, 94 S.Ct. 2963; *Francis v. Coughlin,* 891 F.2d 43, 47 (2d Cir.1989)). Although the law does provide Gonyea, serving as hearing officer, with discretion, this discretion is not absolute. *See Wolff,* 418 U.S. at 564–65, 94 S.Ct. 2963. Gonyea must set forth a reasonable justification for his decision. *See Ponte,* 471 U.S. at 498–99, 105 S.Ct. 2192. In this case, the sole reason presented by Gonyea—that disclosure would jeopardize safety—does not explain why the substance of the informant's statements and evidence presented could not be disclosed. It is possible that on further development of the record, Gonyea will be able to justify withholding the substance of the disclosures from Dawkins. *See Sira,* 380 F.3d at 76 (*citing Ponte,* 471 U.S. at 498–99, 105 S.Ct. 2192). At this stage, however, the Court concludes Dawkins has alleged sufficient facts to support a finding "that he presents a viable due process claim based on nondisclosure of evidence and that there is no basis to hold that any reasonable officer could have thought otherwise." *Id.* As such, Gonyea is not entitled to qualified immunity on Dawkins's due process claim, should Dawkins eventually plead a cognizable liberty interest.

Dawkins is advised that an amended complaint would constitute a complete replacement of his previous complaint. *See*

*International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977) (noting that an amended complaint "renders [any prior complaint] of no legal effect"). Therefore, if Dawkins chooses to submit an amended complaint, the new pleading must include every allegation that he chooses to make against the Defendants. Based on the Complaint's deficiencies, as described above, Dawkins's claims as currently stated must be dismissed. However, Dawkins is free to replead his claims to address these deficiencies.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants Paul Gonyea, Steven Katz, and Raymond Cunningham to dismiss the complaint of plaintiff Lawrence Dawkins ("Dawkins") is GRANTED; and it is further

**ORDERED** that Dawkins shall have leave to file an amended complaint within sixty (60) days of the date of this Order so as to replead his claim of a due process violation in accordance with the Court's decision above.

The Clerk of the Court is directed to withdraw any pending motions and close this case.

**SO ORDERED.**